# EXHIBIT A

Karen Barth Menzies (CA SBN 180234)
karen@justicelc.com
**JUSTICE LAW COLLABORATIVE, LLC**
6701 Center Drive West, 1400
Los Angeles, California 90045
Telephone: (310) 363-0030

**ELECTRONICALLY FILED**
Superior Court of California,
County of Fresno
By: Amanda Gardenhire, Deputy Clerk
**07/17/26 12:28 PM**

Noble McIntyre (OK No. 16359) (*pro hac vice* forthcoming)
noble@mcintyrelaw.com
Christopher Schnieders (MO No. 57725) (*pro hac vice* forthcoming)
chris@mcintyreschnieders.com
Mario D'Angelo (NY No. 2178044) (*pro hac vice* forthcoming)
mdesq@mcintyreschnieders.com
**MCINTYRE SCHNIEDERS**
6731 W. 121st St.
Overland Park, Kansas 66209
Telephone: (913) 627-9416

David Grossman (NY No. 2693919) (*pro hac vice* forthcoming)
dgrossman@kellyandgrossman.com
**KELLY & GROSSMAN, LLP**
1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996

*Counsel for Plaintiff, City of Fresno*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF FRESNO**

| | |
|---|---|
| CITY OF FRESNO,<br><br>Plaintiff,<br><br>vs.<br><br>PHILIP MORRIS USA, INC., ALTRIA GROUP, INC., R.J. REYNOLDS TOBACCO COMPANY, REYNOLDS AMERICAN INC., SANTA FE NATURAL TOBACCO COMPANY, INC., BRITISH AMERICAN TOBACCO P.L.C., ITG BRANDS, LLC, LIGGETT GROUP, LLC, LIGGETT VECTOR BRANDS LLC, PITCO TOBACCO, INC., and DOES 1 THROUGH 100,<br><br>Defendants. | **Case No.:** 26CU02087<br><br>**COMPLAINT FOR:**<br><br>**1. PUBLIC NUISANCE (CAL. CIV. CODE §§ 3479-3480)**<br>**2. CONTINUING TRESPASS**<br>**3. NEGLIGENCE – DESIGN DEFECT**<br>**4. STRICT LIABILITY – DESIGN DEFECT**<br>**5. UNJUST ENRICHMENT/RESTITUTION**<br>**6. VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE §§ 17000 ET SEQ.**<br>**7. DECLARATORY RELIEF**<br>**8. INJUNCTIVE RELIEF AND ABATEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW, Plaintiff, City of Fresno (hereinafter "Plaintiff" or 'City" or "Fresno"), who alleges and complains against DEFENDANTS, and each and all of them as follows:

## I. NATURE OF THE CASE

1. According to Philip Morris International "By 2030 there could be more cigarette butts than fish in the oceans."[1]

2. This is an action to recover the costs imposed upon municipalities by the design, manufacture, marketing, distribution, and sale of filtered cigarettes incorporating non-biodegradable plastic filters that Defendants have long known, and intended, would be discarded following their ordinary and intended use, thereby resulting in the continual deposition of persistent plastic waste upon municipal property and within municipal stormwater systems and waterways. This unsightly cigarette waste ultimately flows into surrounding streams, rivers and oceans.

3. Plaintiff does not seek to recover for smoking-related disease, addiction, personal injury, healthcare expenditures, or any of the claims historically asserted in tobacco litigation. Instead, Plaintiff seeks to recover for separate and distinct injuries to municipal property, infrastructure, stormwater systems, waterways, public resources, and governmental operations resulting from the foreseeable accumulation of discarded plastic cigarette filters throughout the municipality and disgorgement of the economic benefits Defendants derived from the sale and distribution of filtered cigarette products incorporating non-biodegradable plastic filters while externalizing the foreseeable and continuing environmental, operational, infrastructure, stormwater-management, and cleanup costs associated with cigarette filter waste onto Fresno and the public.

4. Modern cigarette filters are manufactured primarily from cellulose acetate, a synthetic plastic polymer that does not biodegrade under ordinary environmental conditions. Although exposure to sunlight and weather may cause these filters to fragment into progressively

[1] "PMI is determined to fight the environmental damage caused by plastic and post-consumer waste from our products – particularly cigarette butts."
Reducing plastic litter| PMI - Philip Morris International, accessed July 11, 2026.

smaller plastic particles, including microplastics, the underlying plastic material persists in the environment and continues to require municipal collection, removal, management, and disposal.

5. The ordinary and intended lifecycle of every filtered cigarette necessarily culminates in the separation and disposal of the cigarette filter immediately following consumption. For decades, Defendants have known that a substantial percentage of those filters are discarded onto streets, sidewalks, parks, public rights-of-way, transit corridors, storm drains, and other public places, where they are transported by wind, precipitation, and stormwater runoff into municipal drainage systems and waterways.

6. The widespread deposition of discarded cigarette filters is neither accidental nor an unforeseeable misuse of Defendants' products. Rather, it is the statistically dominant post-consumption disposal pathway associated with filtered cigarettes and an inherent consequence of the manner in which Defendants designed, manufactured, marketed, and distributed those products.

7. Despite possessing decades of knowledge regarding the environmental persistence of cellulose acetate filters and their predictable accumulation throughout municipal environments, Defendants continued to manufacture and distribute filtered cigarettes incorporating non-biodegradable plastic filters without adopting feasible alternative designs, implementing meaningful product stewardship measures, or otherwise assuming responsibility for the substantial municipal costs generated by their products after consumption. Defendants also knowingly perpetuated the misperception among cigarette users that the plastic filters are bio-degradable and could be disposed of in public places without any significant consequence.

8. As a direct and foreseeable result of Defendants' conduct, municipalities throughout the United States are required to expend substantial public resources investigating, collecting, removing, transporting, managing, and disposing of discarded cigarette filters; maintaining streets, parks, sidewalks, stormwater infrastructure, and waterways affected by filter accumulation; and complying with environmental and stormwater-management obligations arising from persistent plastic pollution.

9. The injuries alleged in this action are continuing in nature. Each filtered cigarette placed into the stream of commerce creates a foreseeable risk that its plastic filter will be discarded

onto municipal property or enter municipal stormwater systems, thereby imposing recurring operational, environmental, maintenance, and remediation burdens that continue long after the product has been consumed.

10. The injuries alleged herein do not arise from a single unidentified cigarette filter or an isolated product occurrence. They arise from the continuing and cumulative accumulation of enormous quantities of discarded cigarette filters manufactured, marketed, supplied, distributed, and sold by Defendants for consumption within Fresno. Each Defendant's relevant conduct increased the volume, density, geographic dispersion, and continuing physical presence of discarded cigarette filters upon City-owned or maintained property and within City stormwater and drainage infrastructure.

11. Plaintiff alleges that Defendants knowingly externalized the foreseeable costs of managing persistent plastic cigarette filter waste onto municipalities while retaining the economic benefits derived from the manufacture and sale of filtered cigarettes. Plaintiff seeks to recover those municipal costs, obtain equitable and injunctive relief where authorized by law, and require Defendants to bear responsibility for the continuing harms caused by the design and distribution of their products.

## II. PARTIES

### Plaintiff

12. Plaintiff, the City of Fresno, is a charter city and municipal corporation organized and existing under the Constitution and laws of the State of California.

13. This action is brought pursuant to the City's police powers and nuisance-abatement authority under Article XI, sections 5 and 7 of the California Constitution. As a charter city, Fresno possesses plenary authority over municipal affairs, including the protection of public property, infrastructure, stormwater systems, waterways, environmental quality, and public health within its jurisdiction.

14. Pursuant to California Government Code section 38771, Fresno may declare what constitutes a nuisance and may provide for its prevention and abatement. Fresno is further authorized under Government Code section 37100 to enact and enforce ordinances necessary to

protect the public health, safety, and welfare, including ordinances regulating litter, refuse, solid waste, illegal dumping, stormwater pollution, and environmental protection.

15. This action is also brought pursuant to:

a) California Civil Code sections 3479 and 3480 (public nuisance);

b) California Penal Code section 374.4 (unlawful disposal of litter and waste);

c) Fresno Municipal Code Chapter 6, Article 7, governing urban stormwater quality management, prohibited and illicit discharges, pollutant control, enforcement, and protection of the municipal stormwater system;

d) Applicable provisions of the Fresno Municipal Code governing public nuisances, litter, unlawful dumping, refuse, and interference with City property and infrastructure;

e) The Porter-Cologne Water Quality Control Act (California Water Code section 13000 et seq.); and

f) Other applicable California statutory and common law governing solid waste, environmental protection, and municipal property rights.

16. Fresno owns, operates, and maintains public streets, sidewalks, parks, public rights-of-way, stormwater infrastructure, drainage facilities, and is a permittee for a municipal separate storm sewer system ("MS4") that ultimately conveys stormwater to local creeks and the San Joaquin River watershed. Fresno is subject to state and federal stormwater regulatory obligations, including NPDES permitting requirements administered by the California State Water Resources Control Board and the Central Valley Regional Water Quality Control Board.

17. As an MS4 permittee, Fresno is required to implement and maintain a Storm Water Quality Management Program designed to reduce pollutants discharged through the MS4 to the maximum extent practicable. Compliance with these obligations requires Fresno to inspect, maintain, and clean municipal streets and drainage infrastructure; remove litter and debris from stormwater conveyances; prevent pollutants from entering receiving waters; enforce applicable stormwater requirements; and undertake other pollution-prevention measures. Cigarette filters and

other tobacco-product waste constitute a recurring component of this required maintenance and impose substantial operational and financial burdens upon Fresno.

18. The accumulation of non-biodegradable cigarette filter waste within the City's streets, drainage systems, and coastal waters increases the City's regulatory compliance burdens, including stormwater pollution prevention, trash capture requirements, and pollutant load reduction mandates applicable to municipal stormwater discharges.

19. The City has a strong governmental interest in protecting its public property, natural resources, coastal environment, stormwater infrastructure, and waterways from the accumulation of persistent plastic waste, and in recovering the costs associated with investigation, monitoring, cleanup, removal, regulatory compliance, and abatement of such waste.

20. This action seeks recovery of municipal expenditures, property damages, equitable relief, and abatement arising from the accumulation of non-biodegradable cigarette filter waste on Fresno property and within Fresno's stormwater infrastructure and waterways. Plaintiff does not seek recovery for personal injuries, healthcare expenditures, smoking-related disease, nicotine addiction, or any claim relating to cigarette advertising, labeling, or federally mandated health warnings.

**Manufacturing Defendants**

21. The Manufacturing Defendants are engaged in the business of designing, manufacturing, marketing, promoting, distributing, and selling filtered cigarette products throughout the United States, including within the State in which Plaintiff is located.

22. At all relevant times, the Manufacturing Defendants designed, manufactured, and placed filtered cigarette products into the stream of commerce with the expectation and intent that those products would be purchased, consumed, and discarded within Plaintiff's jurisdiction.

23. The Manufacturing Defendants selected, developed, and utilized cigarette filters composed primarily of cellulose acetate, a synthetic plastic polymer that persists in the environment under ordinary conditions following disposal.

24. At all relevant times, the Manufacturing Defendants possessed knowledge superior to that of consumers and Plaintiff concerning the composition, environmental persistence, foreseeable post-consumption disposal, and environmental consequences of plastic cigarette filters.

25. The Manufacturing Defendants have derived substantial revenues and profits from the manufacture and sale of filtered cigarette products throughout the United States, including within Plaintiff's jurisdiction.

26. Upon information and belief, the Manufacturing Defendants knew or reasonably should have known that the ordinary and intended use of filtered cigarettes necessarily results in the separation and disposal of the cigarette filter immediately following consumption, and that a substantial percentage of those filters would be discarded upon public property or transported into municipal stormwater systems and waterways.

27. Despite that knowledge, the Manufacturing Defendants continued to manufacture and distribute filtered cigarettes incorporating non-biodegradable plastic filters without adopting feasible alternative designs, implementing meaningful product stewardship measures, or otherwise assuming responsibility for the municipal costs associated with the accumulation of discarded cigarette filters.

28. Upon information and belief, each Defendant that manufactured, supplied, distributed, or sold filtered cigarettes within Fresno introduced substantial quantities of filtered cigarettes incorporating cellulose acetate plastic filters into the relevant market during the period for which Plaintiff seeks relief.

29. The filtered cigarettes manufactured or supplied by each such Defendant were purchased and consumed within Fresno, and the resulting discarded filters contributed to the continuing accumulation of cigarette-filter waste upon City-owned or maintained property and within City stormwater and drainage infrastructure.

30. Each such Defendant's contribution to the volume of filtered cigarettes sold and consumed within Fresno was substantial and was more than negligible, theoretical, or de minimis.

31. Plaintiff will establish each Defendant's contribution through direct and circumstantial evidence, including sales and shipment records, wholesale and retail distribution

records, market-participation evidence, tobacco-tax records, governmental and commercial data, physical sampling, brand-identification evidence, litter audits, and expert analysis.

32. Defendants possess or control substantially greater information concerning their historical and current sales volumes, brand distribution, wholesale shipments, retail channels, and geographic market participation than Fresno.

33. The Manufacturing Defendants' conduct, individually and collectively, materially contributed to the continuing accumulation of discarded cigarette filters throughout Plaintiff's municipality and to the resulting harms alleged in this Complaint.

**i. Philip Morris USA Inc.**

34. Defendant Philip Morris USA Inc. ("Philip Morris") is a corporation organized under the laws of the Commonwealth of Virginia.

35. Philip Morris maintains its principal place of business outside the State of California.

36. At all relevant times, Philip Morris designed, manufactured, marketed, promoted, distributed, and sold filtered cigarette products throughout the United States, including within California and Fresno.

37. Philip Morris placed those products into the stream of commerce with the expectation that they would be purchased, consumed, and discarded within Fresno.

**ii. Altria Group, Inc.**

38. Defendant Altria Group, Inc. ("Altria") is a corporation organized under the laws of the Commonwealth of Virginia.

39. Altria is the parent company of Philip Morris.

40. Upon information and belief, Altria participated in, directed, approved, coordinated, or controlled material aspects of the manufacture, marketing, distribution, environmental policy, or product-stewardship practices concerning filtered cigarettes sold by Philip Morris.

41. Altria financially benefited from the manufacture and sale of Philip Morris filtered cigarette products, including products sold within California and Fresno

42. Plaintiff seeks to hold Altria liable for its own acts and omissions and does not rely solely upon its ownership of Philip Morris.

**iii. R.J. Reynolds Tobacco Company**

43. Defendant R.J. Reynolds Tobacco Company ("R.J. Reynolds") is a corporation organized under the laws of the State of North Carolina.

44. R.J. Reynolds maintains its principal place of business in Winston-Salem, North Carolina.

45. At all relevant times, R.J. Reynolds designed, manufactured, marketed, promoted, distributed, and sold filtered cigarette products throughout the United States, including within California and Fresno.

46. R.J. Reynolds' filtered cigarette brands sold within the United States include, among others, Newport, Camel, Pall Mall, Lucky Strike, Doral, Misty, and Capri.

47. R.J. Reynolds placed its filtered cigarette products into the stream of commerce with the expectation that they would be purchased, consumed, and discarded within Fresno.

**iv. Santa Fe Natural Tobacco Company, Inc.**

48. Defendant Santa Fe Natural Tobacco Company, Inc. ("SFNTC") is a corporation organized under the laws of the State of New Mexico.

49. SFNTC is therefore a citizen of New Mexico for purposes of diversity jurisdiction.

50. SFNTC is an active operating subsidiary of Reynolds American Inc.

51. SFNTC manufactures and markets Natural American Spirit cigarettes and other tobacco products within the United States.

52. Natural American Spirit cigarettes are sold and consumed throughout California, including within Fresno.

53. At all relevant times, SFNTC designed, manufactured, marketed, promoted, distributed, supplied, or sold filtered Natural American Spirit cigarettes within California and Fresno.

54. SFNTC placed Natural American Spirit cigarettes into the stream of commerce with the expectation and intent that they would be purchased, consumed, and discarded within Fresno.

55. SFNTC selected, approved, incorporated, and utilized cellulose acetate plastic filters in Natural American Spirit cigarette products.

56. SFNTC derived substantial revenues from the manufacture and sale of Natural American Spirit cigarettes within California and Fresno.

57. SFNTC's manufacture and sale of filtered Natural American Spirit cigarettes materially contributed to the accumulation of discarded plastic cigarette filters upon and within Plaintiff's municipal property and infrastructure.

58. Plaintiff's claims against SFNTC arise from SFNTC's own conduct as the direct manufacturer and marketer of Natural American Spirit cigarette products and not merely from its status as an affiliated or subsidiary corporation.

**v. Reynolds American Inc.**

59. Defendant Reynolds American Inc. ("Reynolds American") is a corporation organized under the laws of the State of North Carolina.

60. Reynolds American is the United States parent company of R.J. Reynolds and SFNTC.

61. Reynolds American is itself an indirect, wholly owned subsidiary of British American Tobacco p.l.c.

62. Upon information and belief, Reynolds American participated in, directed, approved, coordinated, or controlled material aspects of the manufacture, marketing, distribution, product strategy, environmental policy, or product-stewardship practices concerning filtered cigarette products sold by its operating subsidiaries.

63. Reynolds American financially benefited from the manufacture and sale of filtered cigarette products by R.J. Reynolds, including products sold within California and Fresno.

64. Plaintiff seeks to hold Reynolds American liable for its own acts and omissions and does not rely solely upon its ownership of R.J. Reynolds.

**vi. British American Tobacco p.l.c. and Affiliated Entities**

65. Defendant British American Tobacco p.l.c. ("BAT p.l.c.") is a public limited company organized under the laws of England and Wales.

66. In July 2017, BAT p.l.c. acquired the remaining ownership interest in Reynolds American that it did not already own.

67. Following that transaction, Reynolds American became an indirect, wholly owned subsidiary of BAT p.l.c.

68. Upon information and belief, BAT p.l.c. and any properly named BAT-affiliated Defendant participated in, directed, approved, coordinated, or controlled material aspects of the filtered-cigarette business relevant to the claims alleged herein.

69. Plaintiff seeks to hold BAT p.l.c. and any BAT-affiliated Defendant liable only for their own actionable conduct and not merely because of their corporate ownership interests.

70. Upon information and belief, at all relevant times, BAT p.l.c. manufactured and placed filtered cigarette products into the stream of commerce for distribution and sale throughout the United States, including within California and Fresno.

**vii. ITG Brands, LLC**

71. Defendant ITG Brands, LLC ("ITG") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Greensboro, North Carolina.

72. At all relevant times, ITG designed, manufactured, marketed, promoted, distributed, and sold filtered cigarette products throughout the United States, including within California and Fresno.

73. ITG is the manufacturer or seller of major filtered cigarette brands sold in California, including Winston, Kool, Salem, Maverick, and other cigarette products containing cellulose acetate filters.

74. ITG placed those products into the stream of commerce with the expectation that they would be purchased, consumed, and discarded within Fresno.

**viii. Liggett Group LLC**

75. Defendant Liggett Group LLC ("Liggett") is a limited liability company organized under the laws of the State of Delaware.

76. Liggett maintains its principal place of business in Mebane, North Carolina.

77. At all relevant times, Liggett designed, manufactured, marketed, promoted, distributed, and sold filtered cigarette products throughout the United States, including within California and Fresno.

78. Liggett placed those products into the stream of commerce with the expectation that they would be purchased, consumed, and discarded within Fresno.

**ix. Liggett Vector Brands LLC**

79. Defendant Liggett Vector Brands LLC ("Liggett Vector") is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Morrisville, North Carolina.

80. At all relevant times, Liggett Vector designed, manufactured, marketed, promoted, distributed, and sold filtered cigarette products throughout the United States, including within California and Fresno.

81. Liggett Vector placed those products into the stream of commerce with the expectation that they would be purchased, consumed, and discarded within Fresno.

**<u>Distributor Defendants</u>**

**x. Pitco Tobacco, Inc**

82. Defendant Pitco Tobacco, Inc. is a corporation organized under the laws of the State of California, with its principal place of business located at 567 Cinnabar Street, San Jose, California 95110.

83. At all relevant times, ("Pitco") distributed, marketed, supplied, and sold filtered cigarette products within Plaintiff's jurisdiction, including products manufactured by one or more of the Manufacturing Defendants.

84. Pitco is, and at all relevant times was, engaged in the regular business of purchasing, marketing, warehousing, distributing, supplying, and selling filtered cigarette products throughout Plaintiff's jurisdiction as an integral participant in the commercial distribution chain through which those products reached retailers and consumers.

85. At all relevant times Pitco purchased filtered cigarette products from one or more of the Manufacturing Defendants and distributed those products to convenience stores, grocery stores, pharmacies, tobacco retailers, gas stations, and other retail establishments serving Plaintiff's jurisdiction. The Local Distributor Defendants regularly supplied retailers throughout Plaintiff's

jurisdiction with substantial quantities of filtered cigarette products manufactured by one or more Manufacturing Defendants.

86. Pitco was a substantial participant in the chain of distribution through which filtered cigarette products were introduced into Plaintiff's jurisdiction and made continuously available for retail sale throughout the municipality.

87. Pitco derived substantial revenue and economic benefit from the distribution and sale of filtered cigarette products within Plaintiff's jurisdiction.

88. Pitco's continued distribution of substantial quantities of filtered cigarette products into Fresno increased the volume, availability, density, and geographic dispersion of the filtered cigarettes whose discarded filters accumulated upon City-owned or maintained property and within City infrastructure.

89. Upon information and belief, Pitco knew or reasonably should have known that filtered cigarette products were routinely consumed within Plaintiff's jurisdiction, that cigarette filters were ordinarily discarded immediately following consumption, and that discarded cigarette filters routinely accumulated upon municipal property and within municipal stormwater systems.

90. Upon information and belief, Pitco further knew or reasonably should have known that discarded cigarette filters routinely accumulate upon streets, sidewalks, parks, public rights-of-way, stormwater infrastructure, waterways, and other municipal property within the communities in which the products were distributed and sold requiring a municipal response.

91. Although Pitco did not design or manufacture the cigarette filters at issue, they knowingly participated in placing substantial quantities of filtered cigarette products into Plaintiff's jurisdiction and materially contributed to the volume, density, and geographic distribution of discarded cigarette filters accumulating upon municipal property.

92. Upon information and belief, Pitco continued distributing filtered cigarette products within Plaintiff's jurisdiction despite the readily observable and widely recognized accumulation of discarded cigarette filters throughout the communities it served and despite the foreseeable municipal burdens resulting from that continuing accumulation.

93. Pitco profited from the continued distribution and sale of filtered cigarette products while materially contributing to the continuing municipal harms alleged in this Complaint.

94. Pitco's conduct was a substantial factor in causing the recurring physical invasion of Plaintiff's property and the resulting injuries alleged herein by continuously supplying filtered cigarette products into Fresno and thereby materially contributing to the ongoing accumulation of discarded cigarette filters upon municipal property.

**Successor, Brand Transfer and Enterprise Allegations**

95. Plaintiff alleges upon information and belief that certain cigarette brands sold by Defendants during the relevant period were acquired, transferred, assigned, divested, or otherwise moved among tobacco-company entities, including entities associated with Reynolds, Lorillard, Brown & Williamson, ITG, BAT, and related corporate predecessors or successors.

96. Plaintiff does not name Lorillard Tobacco Company or Brown & Williamson Tobacco Corporation as separate current operating defendants at this time. Instead, Plaintiff alleges that their historical knowledge, documents, conduct, product decisions, brand responsibilities, liabilities, and market participation are relevant to the claims asserted against their successors, brand acquirers, parent entities, and related tobacco-company defendants, including R.J. Reynolds, Reynolds American, BAT, and ITG.

97. To the extent any Defendant contends that another entity designed, manufactured, sold, owned, transferred, distributed, controlled, or profited from a cigarette brand or filtered cigarette product at issue, Plaintiff alleges successor liability, assumed liability, enterprise liability, agency, ratification, aiding and abetting, concerted action, and substantial participation in the alternative, and will seek leave to conform the pleadings to the evidence as discovery confirms the precise corporate allocation of responsibility.

**Doe Defendants 1 Through 100**

98. The true names and/or capacities, whether individual, corporate, partnership, associate, governmental, or otherwise, of Defendant DOES 1 through 100, inclusive, and each of them, are unknown to Plaintiff at this time, who therefore sues said Defendants by such fictitious names. Plaintiff is informed and believes, and thereon alleges, that each Defendant designated

herein as a DOE caused injuries and damages proximately thereby to Plaintiff as hereinafter alleged; and that each DOE Defendant is liable to the Plaintiff for the acts and omissions alleged herein below, and the resulting injuries to Plaintiff, and damages sustained by the Plaintiff. Plaintiff will amend this Complaint to allege the true names and capacities of said DOE Defendants when the same are ascertained.

99. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, each of the named Defendants and each of the DOE Defendants was the agent, servant, employee and/or joint venturer of the other co-Defendants and other DOE Defendants, and each of them, and at all said times, each named Defendant and each DOE Defendant was acting in the full course, scope and authority of said agency, service, employment and/or joint venture.

100. Plaintiff is informed and believes and alleges that at all times mentioned herein, Defendants and DOES 1 through 100, inclusive, and each of them, were also known as, formerly known as and/or were the successors and/or predecessors in interest/business/product line/or a portion thereof, assigns, a parent, a subsidiary (wholly or partially owned by, or the whole or partial owner), affiliate, partner, co-venturer, merged company, alter egos, agents, equitable trustees and/or fiduciaries of and/or were members in an entity or entities engaged in the funding, researching, studying, manufacturing, fabricating, designing, developing, labeling, assembling, distributing, supplying, leasing, buying, offering for sale, selling, inspecting, servicing, contracting others for marketing, warranting, rebranding, manufacturing for others, packaging and advertising of Roundup® and/or other Monsanto glyphosate-containing products. Defendants and DOES 1 through 100, inclusive, and each of them, are liable for the acts, omissions and tortious conduct of their successors and/or predecessors in interest/business/product line/or a portion thereof, assigns, parents, subsidiaries, affiliates, partners, co-venturers, merged companies, alter egos, agents, equitable trustees, fiduciaries and/or their alternate entities in that Defendants and DOES 1 through 100, inclusive, and each of them, enjoy the goodwill originally attached to each such alternate entity, acquired the assets or product line (or portion thereof), and in that there has been a virtual destruction of Plaintiff's remedy against each such alternate entity, and that each such Defendant has the ability to assume the risk spreading role of each such alternate entity.

101. Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants and DOES 1 through 100, inclusive, and each of them, were and are corporations organized and existing under the laws of the State of California or the laws of some state or foreign jurisdiction; that each of the said Defendants and DOE Defendants were and are authorized to do and are doing business in the State of California and regularly conducted business in California, including in Fresno County.

102. Upon information and belief, at all relevant times, Defendants and DOES 1 through 100, and each of them, inclusive, were engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, selling, marketing, and/or introducing into interstate commerce and into the State of California, including in Fresno County, either directly or indirectly through third parties or related entities, Roundup® and/or other Monsanto glyphosate-containing products.

103. At all relevant times, Defendants and DOES 1 through 100, inclusive, and each of them, conducted regular and sustained business and engaged in substantial commerce and business activity in the State of California, which included but was not limited to selling, marketing and distributing Roundup® and/or other Monsanto glyphosate-containing products in the State of California, including in Fresno County.

104. At all relevant times, Defendants and DOES 1 through 100, inclusive, and each of them, expected or should have expected that their acts would have consequences within the United States of America including the State of California, including Fresno County, and said Defendants derived and derive substantial revenue therefrom.

## III. AGENCY/JOINT VENTURE

105. At all relevant times, each Defendant acted individually and/or in concert with one or more of the other Defendants in the design, manufacture, marketing, distribution, and sale of filtered cigarette products. To the extent any Defendant acted through a parent corporation, subsidiary, affiliate, distributor, agent, servant, employee, representative, or other intermediary, such acts were authorized, directed, ratified, or otherwise undertaken within the course and scope of that relationship.

106. At all relevant times, Defendants rendered substantial assistance and encouragement to one another in placing filtered cigarette products incorporating non-biodegradable plastic filters into the stream of commerce. Each Defendant knew or reasonably should have known that the conduct described herein would foreseeably contribute to the continuing accumulation of cigarette filter waste on public property and to the nuisance, trespass, and statutory violations alleged in this Complaint. To the extent the evidence establishes an agency relationship, concerted action, joint enterprise, aiding and abetting, or other basis for derivative liability among one or more Defendants, Plaintiff alleges such liability in the alternative.

## IV. <u>STATUTE OF LIMITATIONS</u>

107. The wrongful conduct alleged herein constitutes a continuing nuisance and continuing trespass under California law. Defendants continue to manufacture, market, distribute, and sell filtered cigarettes incorporating non-biodegradable cellulose acetate plastic filters into the Fresno market, and the resulting accumulation of persistent plastic cigarette filter waste upon Plaintiff's property, stormwater infrastructure, drainage systems, waterways, and other public resources is continuous and recurring. Each sale and distribution of filtered cigarette products within Fresno foreseeably results in additional cigarette filter waste being deposited upon municipal property, and each day that such persistent plastic waste remains upon Plaintiff's property constitutes a continuing interference with Plaintiff's property rights and public resources. Accordingly, Plaintiff seeks recovery for all damages, response costs, cleanup expenses, abatement costs, restitution, and other relief recoverable within the applicable limitations period, together with prospective equitable and injunctive relief necessary to abate the continuing nuisance and continuing trespass. To the extent any Defendant contends that discrete conduct occurred outside an applicable limitations period, Plaintiff independently seeks recovery for all injuries, damages, and municipal expenditures incurred within the applicable statutory period.

## V. <u>JURISDICTION</u>

108. This Court has subject matter jurisdiction over this action pursuant to Article VI, section 10 of the California Constitution because the Superior Court is a court of general jurisdiction. Plaintiff asserts claims arising exclusively under California statutory law, applicable

provisions of the Fresno Municipal Code, and California common law, including claims for public nuisance, continuing trespass, negligence, strict liability, restitution, unjust enrichment, equitable indemnity, and equitable abatement. Plaintiff does not assert any claim arising under federal law. References to federal statutes, regulations, permits, or environmental programs are included solely as factual background regarding Plaintiff's municipal responsibilities and do not constitute independent causes of action. No federal question is presented on the face of this Complaint.

109. This Court has personal jurisdiction over Defendants pursuant to California Code of Civil Procedure section 410.10 and consistent with the Due Process Clause of the United States Constitution. Defendants, individually and collectively, have purposefully availed themselves of the privilege of conducting business within the State of California, including within Fresno, by designing, manufacturing, marketing, distributing, promoting, supplying, and selling filtered cigarette products intended for sale, consumption, and disposal within California. Defendants placed such products into the stream of commerce with the expectation and intent that they would be purchased, used, and discarded within Fresno. Defendants have directed advertising, sales, or marketing materials at the forum state. Defendants are registered to do business, operate subsidiary companies, and/or maintain physical offices in California. Defendants derive substantial revenue from a high, regular volume of goods sold and consumed in California, maintain continuous commercial relationships with California distributors and retailers, controlling sales, approving sales, and/or directing marketing to the state and have engaged in conduct causing the physical invasion of City-owned or maintained property, continuing nuisance, continuing trespass, statutory violations, and other injuries alleged herein in California. Plaintiff's claims arise directly out of and relate to Defendants' California-directed conduct.

110. Each Defendant has transacted business within California, contracted to supply products within California, and derived substantial revenue from the sale and distribution of filtered cigarette products within Fresno and throughout the State of California. The claims asserted herein arise directly from those California activities, and the exercise of personal jurisdiction over each Defendant comports with traditional notions of fair play and substantial justice.

111. Venue is proper in the Superior Court of California, County of Fresno, pursuant to California Code of Civil Procedure sections 392 and 395 because Plaintiff is located in Fresno County; the causes of action arose in Fresno County; the municipal property, streets, parks, rights-of-way, stormwater infrastructure, drainage systems, waterways, and other public resources at issue are situated in Fresno County; and Defendants have conducted business, distributed products, and committed the acts and omissions giving rise to Plaintiff's claims within Fresno County.

## VI. FACTUAL ALLEGATIONS

### The Filtered Cigarette

112. The filtered cigarette is a consumer product designed, manufactured, marketed, distributed, and sold by Defendants for the purpose of being ignited, smoked, and discarded following ordinary use.

113. A filtered cigarette consists principally of three components: (a) a tobacco column containing processed tobacco; (b) a cigarette filter attached to one end of the tobacco column; and (c) a paper wrapper that binds the product together for consumer use.

114. The cigarette filter is a separate and distinct component of the filtered cigarette. Unlike the tobacco column, which is consumed during smoking, the filter remains substantially intact following ordinary use and is intended to be separated from the cigarette immediately after consumption.

115. For decades, Defendants have manufactured and sold billions of filtered cigarettes each year with filters composed primarily of cellulose acetate, a synthetic plastic polymer selected for its filtration characteristics, durability, manufacturability, and commercial suitability.

116. Because the cigarette filter is not consumed during smoking, every filtered cigarette manufactured and sold by Defendants necessarily generates a discarded filter immediately upon completion of its ordinary and intended use.

117. The generation of a discarded cigarette filter is not an unintended consequence, accidental occurrence, or misuse of the product. Rather, it is an inherent, foreseeable, and unavoidable result of the product's intended design and ordinary use.

118. Defendants have long known that every filtered cigarette placed into the stream of commerce will ultimately produce a discarded cigarette filter requiring disposal by the consumer.

119. Accordingly, the post-consumption management and ultimate disposition of discarded cigarette filters constitute an integral and foreseeable part of the lifecycle of every filtered cigarette manufactured, marketed, distributed, and sold by Defendants.

**The Plastic Filter**

120. The cigarette filters used in the overwhelming majority of filtered cigarettes sold in the United States are composed primarily of cellulose acetate, a synthetic plastic polymer manufactured through the chemical modification of cellulose and engineered to provide durability, structural integrity, and filtration characteristics during the smoking process.

121. Although cellulose acetate is derived from cellulose, the manufacturing process fundamentally alters the material into a synthetic plastic that does not biodegrade under ordinary environmental conditions. Instead of decomposing into naturally occurring organic matter, discarded cellulose acetate filters persist in the environment for extended periods, where they gradually fragment into progressively smaller plastic particles.

122. Exposure to sunlight, moisture, mechanical abrasion, and environmental conditions may cause discarded cigarette filters to crack, fray, discolor, or fragment. These processes constitute physical deterioration rather than biological decomposition and do not eliminate the underlying plastic material from the environment.

123. As discarded cigarette filters fragment, they generate increasingly smaller plastic particles, including microplastics, that may be dispersed by wind, stormwater runoff, surface waters, and other natural processes. The fragmentation of cellulose acetate therefore increases the distribution of plastic pollution rather than eliminating it.

124. In addition to their persistent plastic composition, discarded cigarette filters may retain residual tobacco, nicotine, heavy metals, and other chemical constituents absorbed during manufacture and ordinary consumer use. As a result, discarded cigarette filters are capable of introducing both persistent plastic pollution and associated contaminants into terrestrial and aquatic environments.

125. Defendants have long possessed knowledge concerning the composition, physical characteristics, environmental persistence, and post-consumption behavior of cellulose acetate cigarette filters, including their tendency to remain in the environment and fragment into smaller plastic particles following disposal.

126. Despite that knowledge, Defendants continued to design, manufacture, market, and distribute filtered cigarettes incorporating cellulose acetate filters without implementing feasible measures to eliminate or materially reduce the persistent plastic waste generated by the ordinary and intended use of their products.

127. The persistent plastic nature of cellulose acetate filters is a fundamental characteristic of the product selected, designed, manufactured, and placed into the stream of commerce by Defendants, and is a substantial factor contributing to the continuing municipal harms alleged in this Complaint.

**The Intended Product Lifecycle**

128. The ordinary and intended use of every filtered cigarette necessarily involves three sequential stages: (a) the manufacture and sale of a filtered cigarette incorporating a cellulose acetate filter; (b) the consumer's use of the product through smoking; and (c) the immediate separation and disposal of the cigarette filter following completion of the smoking process.

129. Unlike many consumer products that may remain in service for months or years, the useful life of a filtered cigarette is intentionally brief. Defendants designed the product so that, upon completion of its intended use, the tobacco column is consumed while the plastic cigarette filter remains as a separate waste product requiring disposal.

130. The generation of a discarded cigarette filter is therefore not an unintended consequence of product misuse, but an inevitable and inherent result of the product functioning exactly as designed.

131. Defendants have long known that consumers rarely retain used cigarette filters and that the ordinary and intended use of a filtered cigarette necessarily culminates in the immediate disposal of the filter at or near the location where the product is consumed.

132. Because Defendants manufacture and sell billions of filtered cigarettes annually, they have long understood that the ordinary and intended use of their products inevitably generates billions of discarded plastic cigarette filters requiring post-consumption management and disposal each year.

133. The post-consumption management of discarded cigarette filters is not an activity performed by Defendants. Instead, the foreseeable costs and burdens associated with collecting, removing, transporting, managing, and disposing of discarded cigarette filters have been externalized to municipalities, property owners, and the public.

134. Defendants have continued to design, manufacture, market, distribute, and sell filtered cigarettes despite their longstanding knowledge that the intended lifecycle of the product predictably results in the widespread generation of persistent plastic waste throughout municipal environments.

135. The municipal harms alleged in this Complaint arise not from an isolated misuse of Defendants' products, but from the foreseeable and intended lifecycle of the filtered cigarette itself, which necessarily produces a discarded plastic filter upon completion of every ordinary use.

**<u>The Foreseeable Disposal Pathway</u>**

136. For decades, Defendants have known that the statistically dominant post-consumption disposition of cigarette filters is immediate disposal into the surrounding environment rather than retention, recycling, or placement into an appropriate waste receptacle.

137. Numerous scientific studies, governmental reports, industry publications, and Defendants' own research have consistently recognized that discarded cigarette filters constitute the single most commonly littered consumer product worldwide and are deposited in enormous quantities upon streets, sidewalks, parks, beaches, public rights-of-way, stormwater infrastructure, waterways, and other public and private property.

138. The widespread environmental deposition of discarded cigarette filters is neither random nor extraordinary. Rather, it is the foreseeable, recurring, and statistically predominant consequence of the ordinary and intended use of filtered cigarettes.

139. Defendants have long monitored consumer smoking behavior, product usage patterns, post-consumption disposal practices, and litter studies. Through those efforts, Defendants knew or reasonably should have known that a substantial percentage of consumers discard cigarette filters onto the ground immediately following use and that such disposal behavior has remained persistent over time.

140. Defendants further knew or reasonably should have known that discarded cigarette filters deposited upon streets, sidewalks, parking lots, parks, and other developed areas are routinely transported by wind, precipitation, and stormwater runoff into municipal drainage systems, stormwater infrastructure, streams, rivers, lakes, coastal waters, and other receiving waters.

141. The widespread accumulation of discarded cigarette filters upon municipal property and within municipal stormwater systems is therefore not the result of isolated acts of consumer misconduct. It is the predictable and statistically dominant consequence of placing billions of filtered cigarettes into the stream of commerce each year.

142. Because this disposal pathway has been well known for decades, Defendants have long been able to anticipate that municipalities would bear the recurring burdens and costs of collecting, removing, transporting, managing, and disposing of discarded cigarette filters deposited throughout municipal environments.

143. Despite possessing that knowledge, Defendants continued to manufacture, market, distribute, and sell filtered cigarettes incorporating persistent plastic filters without adopting reasonable measures to materially reduce the predictable generation and environmental accumulation of discarded cigarette filters.

144. The foreseeable disposal pathway for cigarette filters is a direct, foreseeable, and substantial cause of the continuing physical invasion of Plaintiff's property, the contamination of municipal stormwater systems, and the municipal expenditures and other injuries alleged in this Complaint.

**<u>Defendants' Longstanding Knowledge of the Foreseeable Disposal Pathway</u>**

145. Defendants have not been surprised by the widespread accumulation of discarded cigarette filters upon streets, sidewalks, parks, beaches, stormwater systems, waterways, and other

public property. For decades, Defendants have studied the post-consumption disposition of cigarette filters, recognized the environmental persistence of cellulose acetate filters, evaluated consumer disposal behavior, and assessed the regulatory, commercial, and legal implications associated with discarded cigarette filters.

146. Beginning no later than the 1970s, Defendants and their trade organizations undertook extensive internal research concerning cigarette filter litter, environmental degradation, consumer disposal practices, and the increasing public concern regarding the accumulation of discarded cigarette filters throughout the environment. Those efforts included engineering studies, scientific research, strategic planning documents, market research, environmental assessments, and coordinated industry initiatives.

147. Defendants recognized that the widespread environmental deposition of discarded cigarette filters was not an isolated or sporadic occurrence, but a recurring and foreseeable consequence of the ordinary and intended use of filtered cigarettes. Defendants further understood that discarded cigarette filters routinely accumulated on streets, sidewalks, beaches, parks, and other public property and were transported through municipal stormwater systems into rivers, lakes, coastal waters, and other receiving waters. Defendants further understood that many smokers incorrectly believed that the plastic filters are bio-degradable and could be disposed of in public places without any significant consequence. Instead of correcting that misimpression, defendants knowingly perpetuated it.

148. Internal industry documents further demonstrate that Defendants recognized discarded cigarette filters as a growing environmental issue that threatened increased governmental regulation, environmental legislation, taxation, and public criticism of the tobacco industry. Defendants therefore devoted substantial resources to evaluating both the environmental consequences of discarded cigarette filters and the potential business implications arising from those consequences.[2]

---

[2] Dube, M. F., & R&D Department. (2005, March 1). A review of cigarette filter degradability (Document ID: ADFFLAV2005 060). Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/zqbk0228/

149. Defendants likewise recognized that cellulose acetate cigarette filters persisted in the environment for extended periods of time and that the ordinary disposal of cigarette filters presented continuing aesthetic, operational, and environmental problems for municipalities and other governmental entities. Internal engineering memoranda acknowledged that discarded cigarette filters created nuisance conditions upon streets and beaches and contributed to clogging and operational impacts affecting public wastewater and drainage infrastructure.[3]

150. Defendants further recognized that they could not realistically control the locations where consumers discarded cigarette filters following ordinary use. Internal engineering documents acknowledged that smoker disposal behavior could not be reliably controlled and concluded that meaningful reduction of the environmental consequences associated with discarded cigarette filters necessarily required consideration of changes to the product itself rather than reliance solely upon consumer conduct.[4]

151. Throughout the following decades, Defendants continued to investigate cigarette filter litter through consumer research, engineering studies, environmental investigations, product development initiatives, and strategic planning efforts. Those investigations included studies of smoker disposal behavior, environmental persistence, biodegradable filter technologies, alternative filter materials, environmentally oriented product concepts, portable disposal devices, and other measures intended to address the foreseeable accumulation of discarded cigarette filters.

152. Defendants' extensive and continuing research confirms that the environmental accumulation of discarded cigarette filters was not an unforeseen consequence of filtered cigarettes, but rather a well-understood characteristic of the products' ordinary, intended, and foreseeable lifecycle.

---

[3] Luke, J. (1991, September 20). Degradability of filter materials and plastics packaging (Document ID: pzxf0211) [Report]. Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/pzxf0211/

[4] ibid

**Defendants' Internal Research and Corporate Decision-Making**

153. Defendants did not merely recognize the environmental accumulation of discarded cigarette filters. Over a period spanning decades, Defendants devoted substantial scientific, engineering, marketing, and financial resources to studying the problem, evaluating potential responses, and assessing the impact of cigarette filter waste upon the tobacco industry's commercial interests.

154. Internal research programs included investigations into the environmental persistence of cellulose acetate filters, the development of biodegradable and degradable filter materials, alternative filter designs, modified filter components, environmentally-oriented cigarette concepts, smoker disposal behavior, portable disposal devices, public education initiatives, and other measures intended to address the accumulation of discarded cigarette filters following ordinary consumer use.

155. Defendants' internal documents further demonstrate that they evaluated the commercial feasibility, consumer acceptance, manufacturing implications, regulatory consequences, and competitive effects associated with alternative filter technologies and environmentally-oriented product modifications before making business decisions concerning whether such alternatives would be implemented.

156. Defendants likewise evaluated the increasing public concern regarding discarded cigarette filters, monitored proposed legislation and regulatory initiatives concerning cigarette filter waste, assessed potential environmental taxation and cleanup obligations, and developed coordinated corporate strategies for responding to those emerging issues.

157. In 1979, the Tobacco Institute issued guidance in a document titled “Litter (A Proposal for TI Policy),” stating: “Our best course of action may be maintaining a low profile while working to exempt cigarettes from coverage of pending litter control legislation.”[5]

---

[5] Landman, A., Peterson, J. R., Christopher, H., Crohn, M. H., Sustana, R., & Edelman. (1999, December 24). Letters about social acceptability of smoking and "litter" (A proposal for TI Policy) (Document ID: qrhp0219). Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/qrhp0219/, p.3

158. Internal strategic planning documents recognized that discarded cigarette filters had become one of the most visible forms of environmental litter and acknowledged that increasing public concern regarding cigarette filter waste presented a potential threat to cigarette sales, public acceptance of smoking, and future governmental regulation. Rather than treating cigarette filter waste solely as a consumer conduct issue, Defendants analyzed its implications for product development, governmental affairs, public relations, and long-term corporate planning. (RJR strategic planning documents; Tobacco Institute policy papers.)

159. Defendants also evaluated whether modifications to cigarette filters and related product components could reduce the environmental persistence of discarded cigarette filters or otherwise lessen the environmental impacts associated with filtered cigarettes. Those evaluations included research into biodegradable filter materials, modified cellulose acetate compositions, alternative filter structures, and other product design concepts intended to reduce environmental persistence.[6]

160. Defendants' internal research further demonstrated that they understood the practical limitations of relying solely upon smoker education and voluntary disposal campaigns. Defendants investigated portable ashtrays, public education programs, anti-litter campaigns, and other behavioral initiatives while simultaneously recognizing that smoker disposal behavior remained highly variable and that discarded cigarette filters would continue to accumulate throughout the environment as a foreseeable consequence of ordinary product use.

161. For example, a survey conducted in 1996 breaking down smokers by age group and sex reported that up to 96% of smokers dispose of their cigarette ends on the ground.[7]

162. Despite the breadth of this research and the substantial corporate resources devoted to the issue, Defendants continued manufacturing and marketing filtered cigarettes incorporating

---

[6] R&D key programs. Developmental programs (1995, August 10) (Document ID: qgcm0221) [Internal report and email correspondence]. Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/qgcm0221/

[7] Tidy Britain Group. (1996, March). Attitudes towards cigarette disposal outdoors; N403 (Document ID: nffy0090) [Report data and charts]. Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/nffy0090/

persistent cellulose acetate filters while accepting the continuing environmental accumulation of discarded cigarette filters as an ordinary incident of their business operations. Industry documents state that the cost of adopting a more degradable filter would be two hundreths of a penny per pack.[8] Despite this the Defendants chose to shift the costs of the disposal and abatement of plastic filters to municipalities and other governmental entities.

163. Defendants' internal research and strategic planning demonstrate that the environmental accumulation of discarded cigarette filters was not an unforeseen or accidental consequence of their products. Rather, it was a well-understood condition that Defendants repeatedly studied, evaluated, and addressed through corporate planning while continuing to manufacture, market, distribute, and sell filtered cigarettes incorporating persistent plastic filters.

**Defendants' Deliberate Business Decisions**

164. The continued manufacture, marketing, distribution, and sale of filtered cigarettes incorporating cellulose acetate filters were not the result of inadvertence, accident, or a lack of available information. Rather, they were the product of deliberate and continuing business decisions made after decades of internal research, engineering evaluations, environmental studies, consumer research, and strategic planning concerning the foreseeable accumulation of discarded cigarette filters.

165. Defendants possessed the scientific knowledge, engineering capability, manufacturing expertise, financial resources, and organizational capacity to investigate and evaluate product modifications, alternative filter technologies, biodegradable materials, and other measures intended to reduce the environmental persistence and municipal impacts of discarded cigarette filters.

---

[8] Philip Morris. (2004, November 18). Marlboro product quality.ppt (Document ID: glcb0219) [PowerPoint slides, email attachment]. Philip Morris Records, Master Settlement Agreement, Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/glcb0219/, p. 10

166. By 1995, "[a] filter was developed that in fact disappeared within 10 minutes when immersed in a cup of water". "After nearly three years of exploratory development the effort was suspended so that resources could be refocused on other business priorities." [9]

167. Defendants likewise evaluated non-design measures, including public education campaigns, smoker disposal initiatives, portable ashtrays, permanent receptacles, product stewardship concepts, governmental relations strategies, and legislative initiatives directed toward cigarette filter waste. Those efforts confirmed Defendants' understanding that discarded cigarette filters would continue to accumulate throughout the environment as a foreseeable consequence of the ordinary use of filtered cigarettes.

168. Internal strategic planning documents further demonstrate that Defendants viewed cigarette filter waste not simply as an environmental issue, but as a matter affecting future regulation, taxation, public acceptance of smoking, and the long-term commercial interests of the tobacco industry. Defendants therefore devoted substantial corporate resources to monitoring legislative developments, coordinating industry responses, and evaluating the business implications of cigarette filter litter while continuing to market the same persistent plastic filter. [10]

169. Although Defendants investigated numerous potential responses—including alternative filter technologies, biodegradable materials, portable ashtrays, public education campaigns, and other environmental initiatives—their internal research also acknowledged the practical limitations of relying upon consumer disposal behavior alone. Defendants nevertheless continued to manufacture and market filtered cigarettes incorporating persistent cellulose acetate filters while transferring the foreseeable costs of their products' post-consumption lifecycle to municipalities and other public entities.

---

[9] Dube, M. F., & R&D Department. (2005, March 1). A review of cigarette filter degradability (Document ID: ADFFLAV2005 060). Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/zqbk0228/

[10] Philip Morris USA. (2001, May 28). PMUSA public place smoking policy & planning meeting 20010528 - 20010529 working notes (Document ID: zkkn0178). Truth Tobacco Industry Documents, University of California, San Francisco. https://www.industrydocuments.ucsf.edu/docs/zkkn0178/

170. The continuation of Defendants' existing product design and marketing practices was therefore not the product of ignorance or a lack of available information. Rather, it reflected deliberate business decisions made after decades of scientific research, engineering evaluations, environmental investigations, consumer studies, and strategic planning concerning the foreseeable accumulation of discarded cigarette filters and the resulting burdens imposed upon municipalities.

171. Defendants' deliberate business decisions, undertaken with longstanding knowledge of the ordinary, intended, and foreseeable post-consumption disposal pathway of filtered cigarettes, constitute a substantial factual basis for the claims asserted in this Complaint.

172. The continuing manufacture, distribution, marketing, promotion, and sale of filtered cigarettes by Defendants continuously replenishes the supply of discarded cigarette filters entering Plaintiff's municipality, such that municipal removal efforts cannot permanently eliminate the condition so long as Defendants continue introducing the challenged products into the stream of commerce.

**Feasible Measures to Reduce the Municipal Harm**

173. Throughout the period relevant to this action, Defendants possessed the technical expertise, engineering capability, scientific knowledge, manufacturing resources, and financial capacity to investigate and evaluate measures capable of materially reducing the municipal harms associated with discarded cigarette filters.

174. Defendants' own research and development programs included investigations into biodegradable filter materials, modified cellulose acetate formulations, alternative filter components, environmentally-oriented cigarette concepts, revised filter construction, modified tipping papers, alternative wrapping materials, and other engineering approaches directed toward reducing the environmental persistence of discarded cigarette filters

175. Defendants likewise investigated non-design measures intended to reduce the accumulation of discarded cigarette filters within the environment, including portable ashtrays, permanent receptacles, smoker disposal campaigns, environmental education initiatives, product stewardship concepts, and other post-consumption management strategies.

176. Internal engineering documents acknowledged that meaningful reduction of the environmental consequences associated with discarded cigarette filters required consideration of changes to the product itself, recognizing that smoker disposal behavior could not realistically be controlled through voluntary efforts alone.

177. Defendants further evaluated consumer acceptance, manufacturing feasibility, commercial implications, and regulatory considerations associated with environmentally-oriented product modifications and alternative filter technologies before determining whether such measures would be implemented.

178. The existence of these research programs and engineering evaluations demonstrates that feasible measures to materially reduce the persistence and municipal impacts of discarded cigarette filters were neither speculative nor unknown to Defendants. Rather, Defendants themselves devoted substantial resources over a period of decades to investigating those measures.

179. Despite possessing the capability to investigate and implement measures capable of materially reducing the municipal harms associated with discarded cigarette filters, Defendants continued to manufacture, market, distribute, and sell filtered cigarettes incorporating persistent cellulose acetate filters while transferring the foreseeable costs of their products' post-consumption lifecycle to municipalities and other public entities.

180. Plaintiff does not allege that any single engineering modification or stewardship initiative would have completely eliminated discarded cigarette filters or the resulting municipal harms. Rather, Plaintiff alleges that Defendants possessed and investigated numerous feasible opportunities to materially reduce those harms yet elected to continue marketing substantially the same persistent plastic filter while externalizing the resulting burdens.

**The Municipal Consequences of Defendants' Conduct**

181. As a direct, natural, and foreseeable consequence of Defendants' continuing manufacture, marketing, distribution, and sale of filtered cigarettes incorporating persistent cellulose acetate filters, discarded cigarette filters accumulate throughout Plaintiff's municipality

upon streets, sidewalks, parks, public rights-of-way, parking areas, public facilities, stormwater infrastructure, drainage systems, waterways, and other publicly owned or maintained property.[11]

182. The accumulation of discarded cigarette filters is neither isolated nor incidental. It is a recurring condition resulting from the ordinary, intended, and foreseeable post-consumption lifecycle of filtered cigarettes and requires Plaintiff to respond on a continuing basis through its public works, sanitation, parks, streets, stormwater, environmental, and other municipal operations.

183. Discarded cigarette filters deposited upon municipal streets, sidewalks, parking areas, and other impervious surfaces are routinely transported by wind, rainfall, and stormwater runoff into gutters, catch basins, storm drains, culverts, detention facilities, drainage channels, and other components of Plaintiff's municipal stormwater system before ultimately entering creeks, rivers, lakes, and other receiving waters.

184. The persistent plastic composition of cellulose acetate filters allows discarded cigarette filters to remain within the municipal environment for extended periods, where they physically accumulate upon municipally owned property, interfere with the intended functioning of municipal infrastructure, contribute to hydraulic obstruction and contamination, require continuing removal, and contribute to the degradation of municipal infrastructure and public spaces.

185. Plaintiff must continually devote personnel, equipment, facilities, administrative resources, and financial resources to investigating, monitoring, collecting, removing, transporting, handling, managing, and disposing of discarded cigarette filters deposited throughout the municipality.

186. Defendants' conduct has required Plaintiff to divert personnel, equipment, financial resources, and operational capacity from other governmental functions in order to inspect, investigate, monitor, maintain, repair, restore, rehabilitate, and protect municipally owned property and infrastructure affected by Defendants' products. These diversions are separate from litigation

---

[11] Schneider, J. E., Scheibling, C. M., Peterson, N. A., et al. (2020). Online simulation model to estimate the total costs of tobacco product waste in large U.S. cities. International Journal of Environmental Research and Public Health, 17(13), 4705. https://doi.org/10.3390/ijerph17134705

expenses and constitute direct operational and proprietary losses resulting from the physical impacts of Defendants' products.

187. Plaintiff has sustained continuing physical injury to municipally owned infrastructure and therefore incurs continuing expenditures associated with maintaining streets, sidewalks, parks, stormwater infrastructure, drainage systems, public rights-of-way, recreational facilities, waterways, and other municipal property affected by the continuing accumulation of discarded cigarette filters.

188. Plaintiff further incurs environmental, regulatory, planning, inspection, and administrative burdens associated with addressing the continuing accumulation of discarded cigarette filters and the persistent plastic waste generated by Defendants' products.

189. The municipal consequences alleged herein are continuing and cumulative. Each additional filtered cigarette manufactured, marketed, distributed, and sold by Defendants foreseeably results in the generation of an additional discarded cigarette filter and contributes to the continuing burdens imposed upon Plaintiff's property, infrastructure, governmental operations, and public resources.

190. Plaintiff seeks recovery solely for injuries to its own municipally owned property, infrastructure, proprietary interests, governmental operations, and financial resources. Plaintiff does not seek recovery for personal injuries allegedly sustained by individual smokers or members of the general public.

**<u>Continuing Physical Presence of Discarded Cigarette Filters on Municipal Property</u>**

191. The discarded cigarette filters generated by Defendants' products do not disappear upon consumption. Rather, they remain physically present throughout Plaintiff's municipality until collected, removed, transported, and disposed of through continuing municipal efforts or natural forces.

192. As a direct and foreseeable consequence of Defendants' continuing manufacture, marketing, distribution, and sale of filtered cigarettes, discarded cigarette filters repeatedly and continually accumulate upon Plaintiff's streets, sidewalks, parks, public rights-of-way, stormwater facilities, drainage systems, waterways, and other publicly owned or maintained property.

193. The physical accumulation of discarded cigarette filters upon municipal property is continuous. Municipal collection and cleanup efforts temporarily remove some discarded cigarette filters, but those efforts are immediately offset by the continual generation and deposition of additional discarded cigarette filters resulting from the ongoing sale, consumption, and disposal of filtered cigarettes.

194. The continuing presence of discarded cigarette filters interferes with Plaintiff's possession, use, maintenance, operation, management, and enjoyment of municipal property by requiring Plaintiff to devote continuing public resources to locating, collecting, removing, transporting, managing, and disposing of discarded cigarette filters deposited throughout the municipality.

195. The accumulation of discarded cigarette filters likewise interferes with the intended operation of Plaintiff's stormwater infrastructure by contributing to the physical accumulation of debris within gutters, catch basins, storm drains, culverts, drainage channels, detention facilities, and related municipal infrastructure requiring continuing inspection, maintenance, and cleaning.

196. Because cellulose acetate cigarette filters persist within the environment for extended periods of time, the physical presence of discarded cigarette filters upon municipal property is not self-correcting. Instead, the condition persists absent continuing municipal intervention.

197. Each additional filtered cigarette manufactured, marketed, distributed, and sold by Defendants foreseeably contributes to the continuing physical accumulation of discarded cigarette filters upon municipal property and to the continuing burdens imposed upon Plaintiff's governmental operations.

198. The continuing physical presence of discarded cigarette filters upon Plaintiff's property constitutes a recurring condition arising from the ordinary, intended, and foreseeable post-consumption lifecycle of Defendants' products and forms the factual basis for the claims asserted in this Complaint.

**Continuing Municipal Response and Abatement Costs**

199. As a direct, natural, and foreseeable consequence of Defendants' conduct, Plaintiff has incurred and continues to incur substantial expenditures in responding to the continuing accumulation of discarded cigarette filters throughout its municipality.

200. Those expenditures include, without limitation, the costs of investigating, monitoring, inspecting, collecting, removing, transporting, handling, managing, and disposing of discarded cigarette filters deposited upon municipal property and within Plaintiff's stormwater infrastructure.

201. Plaintiff further incurs substantial expenditures associated with repairing, restoring, rehabilitating, maintaining, cleaning, repairing, and operating streets, sidewalks, gutters, catch basins, storm drains, culverts, drainage channels, detention facilities, parks, public rights-of-way, waterways, recreational facilities, and other municipal property affected by the continuing accumulation of discarded cigarette filters.[12]

202. Plaintiff likewise devotes personnel, equipment, vehicles, facilities, administrative resources, engineering resources, environmental resources, and other governmental assets to responding to the continuing accumulation of discarded cigarette filters generated by Defendants' products.

203. Plaintiff also incurs ongoing planning, inspection, regulatory compliance, environmental management, public education, and administrative costs associated with addressing the continuing municipal consequences of discarded cigarette filters and the persistent plastic waste generated by Defendants' products.

204. Defendants' conduct has required Plaintiff to divert municipal personnel, equipment, financial resources, and operational capacity away from other governmental purposes in order to inspect, monitor, repair, restore, maintain, and protect municipally owned property affected by discarded cigarette filters.

---

[12] Schneider, J. E., Scheibling, C. M., Peterson, N. A., et al. (2020). Online simulation model to estimate the total costs of tobacco product waste in large U.S. cities. International Journal of Environmental Research and Public Health, 17(13), 4705. https://doi.org/10.3390/ijerph17134705

205. Because Defendants continue to manufacture, market, distribute, and sell filtered cigarettes incorporating persistent cellulose acetate filters, Plaintiff reasonably anticipates continuing to incur substantial future expenditures responding to the ongoing accumulation of discarded cigarette filters throughout its municipality.

206. The continuing municipal response costs alleged herein were not voluntarily assumed by Plaintiff. Rather, they are the direct and foreseeable consequence of Defendants' continuing decisions to manufacture, market, distribute, and sell products whose ordinary, intended, and foreseeable post-consumption lifecycle generates persistent plastic waste upon municipal property.

207. Plaintiff seeks recovery of all past, present, and future response costs, together with all other legal, equitable, and statutory relief authorized by applicable law.

**Aggregate and Concurrent Causation; Commingled and Indivisible Harm**

208. The harms alleged in this Complaint were caused by the cumulative and concurrent contribution of filtered cigarette products manufactured, marketed, supplied, distributed, and sold by Defendants for purchase and consumption within Fresno.

209. Plaintiff does not allege that a single discarded cigarette filter, standing alone, caused the injuries at issue. Rather, the physical condition affecting City-owned or maintained property and infrastructure results from the continuing accumulation of enormous quantities of discarded cigarette filters introduced into Fresno through Defendants' respective commercial activities.

210. Each Defendant that manufactured, supplied, distributed, or sold filtered cigarettes within Fresno materially increased the number, density, geographic dispersion, and continuing physical accumulation of discarded cigarette filters upon City-owned or maintained property and within City stormwater and drainage infrastructure.

211. Each such Defendant's contribution to the continuing condition was substantial and was more than negligible, theoretical, or de minimis.

212. The discarded cigarette filters at issue share the characteristics material to the injuries alleged herein. They remain after ordinary consumption, are composed primarily of persistent cellulose acetate plastic, require immediate disposal, accumulate upon public property,

and are transported by wind, precipitation, and stormwater runoff into gutters, catch basins, storm drains, drainage channels, creeks, sloughs, rivers, and other receiving waters.

213. Once discarded, cigarette filters from multiple manufacturers become physically commingled upon City-owned or maintained property and within City infrastructure. Environmental exposure, weathering, fragmentation, transportation through stormwater, street sweeping, collection, and disposal frequently remove, obscure, or destroy brand-specific identifying characteristics.

214. The commingling of discarded cigarette filters does not eliminate causation. Each relevant Defendant's products contributed to the aggregate physical condition and increased the personnel, equipment, investigation, maintenance, collection, removal, transportation, disposal, remediation, and abatement costs incurred by Fresno.

215. Defendants knew or reasonably should have known that filtered cigarettes would be consumed throughout Fresno, that a substantial percentage of the resulting filters would be discarded into the surrounding environment, and that discarded filters from numerous manufacturers would become commingled upon public property and within public infrastructure.

216. The inability to identify the manufacturer of every individual discarded cigarette filter is the foreseeable consequence of the products' ordinary disposal pathway, environmental exposure, physical deterioration, transportation, and commingling and is not attributable to any failure by Fresno to preserve reasonably available evidence.

217. Plaintiff will establish each relevant Defendant's substantial contribution through the evidence reasonably available for an aggregate environmental condition, including sales and shipment records, wholesale and retail distribution evidence, tax and regulatory records, physical sampling, brand-identification studies, litter audits conducted across appropriate locations and time periods, expert analysis, and other direct and circumstantial evidence.

218. Evidence of a Defendant's share of filtered-cigarette sales or distribution within the relevant Fresno market is relevant evidence of that Defendant's actual contribution to the cigarette-filter waste stream. Plaintiff relies upon such evidence as proof of substantial-factor causation and

relative contribution, not as an allegation that market share alone creates an independent substantive duty or cause of action.

219. The condition upon City-owned or maintained property and within City infrastructure is cumulative. No single discarded filter accounts for the City's injuries, and the City's cleanup and maintenance costs cannot reasonably be assigned on a filter-by-filter basis after discarded filters have become commingled.

220. To the extent the evidence establishes that Defendants' concurrent conduct combined to produce a single physical condition that is not reasonably divisible according to the source of each individual filter, Plaintiff alleges that the resulting condition and associated harm are indivisible.

221. To the extent any Defendant contends that some portion of the condition or resulting damages is reasonably capable of division or allocation, any such division must be supported by competent evidence and a nonspeculative factual basis.

222. In the alternative, if the Court determines that an allocation among Defendants is required, Plaintiff seeks an allocation based upon the best available evidence of each Defendant's actual contribution to the relevant cigarette-filter waste stream, including its sales, shipment volume, distribution, geographic market participation, brands, period of market participation, physical sampling results, and other evidence bearing upon relative contribution.

223. Plaintiff does not seek to impose liability upon any Defendant solely because it is a member of the tobacco industry. Plaintiff seeks to hold each Defendant responsible for its own actionable conduct and for the harm substantially caused or contributed to by that conduct in accordance with California law.

**Punitive Damages**

224. Plaintiff alleges that Defendants' conduct was undertaken with malice, oppression, and/or fraud within the meaning of California Civil Code section 3294. For decades, Defendants knew that filtered cigarettes incorporating cellulose acetate plastic filters would predictably generate persistent plastic waste upon municipal property, in stormwater infrastructure, and in waterways. Defendants further knew that municipalities, including Plaintiff, would be required to expend public

resources to collect, remove, transport, manage, dispose of, remediate, and abate that waste. Despite that knowledge, Defendants consciously continued to design, manufacture, market, promote, sell, supply, and distribute filtered cigarettes incorporating persistent plastic filters, failed to adopt feasible alternatives or meaningful product-stewardship measures, and deliberately externalized the foreseeable costs of their products' post-consumption lifecycle onto Plaintiff and the public.

225. Plaintiff further alleges that the conduct giving rise to punitive damages was authorized, directed, ratified, or carried out by Defendants' officers, directors, managing agents, and/or persons responsible for corporate policy concerning cigarette design, marketing, distribution, environmental strategy, product stewardship, and response to the known environmental consequences of discarded cigarette filters.

## VII. CAUSES OF ACTION

### COUNT I
### Public Nuisance
### (Cal. Civ. Code §§ 3479–3480)

226. Plaintiff realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

227. Through their design, manufacture, marketing, distribution, and sale of filtered cigarettes incorporating persistent cellulose acetate filters, and through their continuing decisions to market those products despite longstanding knowledge of their ordinary, intended, and foreseeable post-consumption disposal pathway, Defendants created, contributed to, participated in, and substantially assisted in creating a continuing condition that has resulted in the widespread accumulation of discarded cigarette filters upon Plaintiff's property and throughout Plaintiff's municipality.

228. The continuing accumulation of discarded cigarette filters upon streets, sidewalks, parks, public rights-of-way, stormwater infrastructure, drainage systems, waterways, and other public property constitutes a continuing interference with rights common to the public, including the public's interest in the safe, efficient, and unobstructed use of municipal property, public infrastructure, public waterways, and other public resources.

229. The condition created and maintained by Defendants is ongoing. Defendants continue to manufacture, market, distribute, and sell filtered cigarettes incorporating persistent cellulose acetate filters, and each additional filtered cigarette placed into the stream of commerce foreseeably contributes to the continuing accumulation of discarded cigarette filters throughout Plaintiff's municipality.

230. The interference alleged herein is substantial. It is neither isolated nor temporary, but instead requires Plaintiff to continually investigate, monitor, collect, remove, transport, manage, and dispose of discarded cigarette filters; maintain and operate municipal property and infrastructure affected by their accumulation; and devote continuing governmental resources to addressing the resulting environmental and operational consequences.

231. The municipal harms alleged herein arise from injuries to Plaintiff's own governmental, proprietary, and property interests and are separate and distinct from any personal injuries or healthcare costs allegedly sustained by individual smokers or members of the general public.

232. Defendants knew, or reasonably should have known, that the ordinary, intended, and foreseeable use of filtered cigarettes would result in the continuing deposition of persistent plastic cigarette filters throughout municipal environments and that municipalities would bear the resulting burdens of responding to that condition. Despite that knowledge, Defendants continued to place billions of filtered cigarettes incorporating persistent cellulose acetate filters into the stream of commerce.

233. As a direct and proximate result of Defendants' conduct, Plaintiff has sustained, and will continue to sustain, substantial response costs, operational burdens, environmental harms, maintenance expenses, investigation costs, monitoring costs, collection costs, transportation costs, disposal costs, and other injuries recoverable under the law governing public nuisance.

234. Plaintiff is entitled to recover all damages, restitution, response costs, abatement costs, equitable relief, injunctive relief where authorized, and all other relief available under the applicable law of the jurisdiction in which this action is brought

**COUNT II**
**Continuing Trespass**

235. Plaintiff realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

236. Under California Penal Code section 374.4 and the Fresno Municipal Code, it is unlawful to deposit, discard, cause to be deposited, or permit litter or waste matter to remain upon public property or within waterways.

237. Defendants' manufacture, distribution, and sale of filtered cigarettes incorporating non-biodegradable plastic filters has directly and foreseeably resulted in the repeated deposition of persistent plastic waste throughout Fresno.

238. Discarded cigarette filters accumulate on:

a) Public streets and sidewalks;

b) Beaches and coastal areas;

c) Parks and public rights-of-way;

d) Storm drains and catch basins; and

e) Municipal stormwater conveyance systems that discharge into the local waterways.

239. Once deposited, cigarette filters are physically indistinguishable regardless of manufacturer and become commingled within the City's public property and drainage infrastructure.

240. The presence of persistent plastic filter waste interferes with the City's ability to maintain clean streets, safe public spaces, functioning stormwater systems, and environmentally compliant coastal discharge.

241. The accumulation of cigarette filters requires the City to:

a) Increase street sweeping frequency;

b) Deploy manual litter removal crews;

c) Clear storm drains and catch basins;

d) Monitor stormwater discharges;

e) Conduct beach and coastal cleanups; and

f) Implement trash-capture and regulatory compliance measures under state and federal stormwater mandates.

242. The persistent deposition of non-biodegradable cigarette filters constitutes a continuing physical invasion of municipal property and infrastructure.

243. This invasion is ongoing and recurring. Each introduction of filtered cigarette products into the Fresno market foreseeably results in additional deposition of plastic filter waste onto municipal property.

244. The resulting harm is not speculative, temporary, or isolated. It is systematic, recurring, and inherent to the design and distribution of filtered cigarettes.

245. Once discarded, filters from multiple manufacturers become commingled upon City-owned or maintained property and within City stormwater and drainage infrastructure. Environmental exposure, weathering, transportation, and collection frequently obscure identifying characteristics. Each Defendant's substantial contribution of filtered cigarettes to the Fresno market materially increased the continuing physical invasion and accumulation alleged herein.

246. Defendants' conduct unreasonably interferes with the City's property rights, burdens public infrastructure, increases regulatory compliance obligations, and diminishes the usability and enjoyment of public spaces within Fresno.

**COUNT III**
**Negligence - Design Defect**

247. Plaintiff realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

248. Defendants owed a duty to exercise reasonable care in the design, manufacture, marketing, distribution, and sale of their products so as to avoid creating foreseeable and unreasonable risks of harm to the property, infrastructure, governmental operations, and proprietary interests of municipalities and other public entities.

249. Defendants knew, or in the exercise of reasonable care should have known, that the ordinary, intended, and foreseeable post-consumption lifecycle of filtered cigarettes would result in

the recurring accumulation of persistent cellulose acetate filters upon municipal property and within municipal stormwater systems and waterways.

250. Defendants further knew, or in the exercise of reasonable care should have known, that municipalities would foreseeably incur substantial costs investigating, monitoring, collecting, removing, transporting, managing, disposing of, and otherwise responding to the continuing accumulation of discarded cigarette filters.

251. Defendants breached their duty of reasonable care by, among other things:

252. Designing, manufacturing, and selling filtered cigarettes incorporating persistent cellulose acetate filters despite longstanding knowledge of their foreseeable post-consumption disposal pathway;

253. Continuing to market and distribute those products after acquiring extensive knowledge regarding the resulting municipal harms;

254. Failing to implement feasible measures capable of materially reducing the persistent plastic waste generated by their products;

255. Failing to exercise reasonable care in evaluating and implementing product designs, materials, or stewardship measures capable of reducing foreseeable municipal harms; and

256. Continuing to transfer the foreseeable post-consumption lifecycle costs of their products to municipalities despite possessing the capability to materially reduce those harms.

257. Defendants' negligence was a substantial factor in causing the continuing accumulation of discarded cigarette filters throughout Plaintiff's municipality and the resulting operational, environmental, financial, and property-related injuries alleged in this Complaint.

258. Each Defendant's relevant conduct materially increased the quantities of filtered cigarettes consumed and discarded within Fresno and thereby materially increased the resulting accumulation of discarded cigarette filters upon City-owned or maintained property and within City stormwater and drainage infrastructure. Plaintiff's injuries arise from that aggregate and cumulative condition.

259. The foreseeable conduct of consumers in discarding cigarette filters does not constitute an extraordinary, independent, or superseding cause because Defendants knew or

reasonably should have known that widespread environmental disposal was the ordinary, statistically prevalent, and foreseeable post-consumption pathway for filtered cigarettes. Consumer disposal therefore does not break the causal connection between Defendants' negligent conduct and the injuries alleged herein.

260. As a direct and proximate result of Defendants' negligence, Plaintiff has incurred and will continue to incur substantial response costs, maintenance expenses, operational costs, investigation costs, monitoring costs, engineering costs, disposal costs, environmental management costs, and other recoverable damages.

261. Plaintiff is entitled to recover all damages, response costs, equitable relief, restitution, abatement costs, and all other relief authorized by the applicable law governing negligence.

**COUNT IV**
**Strict Liability – Design Defect**

262. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

263. At all relevant times, the Manufacturing Defendants were engaged in the business of designing, manufacturing, supplying, distributing, and selling filtered cigarettes and expected those products to reach consumers without material alteration to the cigarette filters incorporated into them.

264. The Manufacturing Defendants designed, manufactured, supplied, distributed, and sold filtered cigarettes incorporating filters composed primarily of cellulose acetate, a synthetic plastic polymer that persists under ordinary environmental conditions and fragments into progressively smaller plastic particles rather than biodegrading into naturally occurring material.

265. The challenged design is the incorporation of a persistent cellulose acetate plastic filter into a single-use cigarette whose ordinary and intended lifecycle necessarily culminates in the immediate separation and disposal of that filter after the tobacco column has been consumed.

266. The generation of a discarded filter is not an accidental, unusual, or unintended consequence of the product. It is an inherent and unavoidable result of the filtered cigarette operating precisely as designed and being used in an intended and reasonably foreseeable manner.

267. The Manufacturing Defendants knew and intended that filtered cigarettes would be purchased and consumed throughout Fresno and knew that a substantial percentage of the resulting filters would be discarded upon streets, sidewalks, parks, parking areas, public rights-of-way, and other developed surfaces from which they would be transported by wind, rainfall, and stormwater runoff onto City-owned property and into the City's stormwater and drainage infrastructure.

268. The design of the Manufacturing Defendants' filtered cigarettes was a substantial factor in causing physical injury to Fresno's property and infrastructure. Because the challenged filters persist after disposal, they physically accumulate upon City-owned or maintained property and within gutters, catch basins, storm drains, culverts, drainage channels, detention facilities, creeks, sloughs, rivers, and other receiving waters.

269. Fresno has consequently incurred and continues to incur costs to inspect, investigate, monitor, collect, remove, transport, manage, and dispose of discarded cigarette filters and to clean, maintain, repair, restore, and operate City-owned property and infrastructure affected by their accumulation.

270. The filtered cigarettes were defective in design because the risks inherent in incorporating a persistent cellulose acetate plastic filter into a single-use cigarette outweighed the benefits, if any, of that design.

271. Factors demonstrating that the risks of the challenged design outweighed its benefits include, without limitation:

272. The enormous volume of persistent plastic waste necessarily generated through the ordinary use of filtered cigarettes;

273. The substantial likelihood that discarded filters would accumulate upon public property and enter municipal stormwater and drainage systems;

274. The extended period during which cellulose acetate filters remain in the environment;

275. The physical accumulation, fragmentation, obstruction, contamination, maintenance requirements, and other harms caused by discarded filters;

276. The substantial and recurring costs imposed upon Fresno and other public entities;

277. The availability and feasibility of alternative designs, materials, and product configurations capable of materially reducing the persistence and environmental consequences of cigarette filters;

278. The Manufacturing Defendants' longstanding technical knowledge, engineering expertise, manufacturing capability, and financial capacity to develop and implement less persistent designs;

279. The relatively low cost of implementing alternative filter materials or designs compared with the substantial public costs imposed by the existing design;

280. The absence of any requirement that cigarettes incorporate cellulose acetate plastic filters;

281. The availability of unfiltered cigarette designs and filters incorporating alternative materials;

282. The Manufacturing Defendants' own research and development concerning biodegradable, degradable, dissolvable, and less persistent filters; and

283. The Manufacturing Defendants' ability to distribute the costs of safer designs and product-stewardship measures among the entities profiting from the manufacture and sale of filtered cigarettes.

284. The Manufacturing Defendants' own research demonstrated that alternative filter designs and materials were technically capable of materially reducing environmental persistence. Among other things, Defendants developed and evaluated filter technologies that degraded or dispersed substantially more rapidly than conventional cellulose acetate filters but declined to implement those technologies as part of their ordinary product lines.

285. Plaintiff does not allege that any single alternative design would necessarily have eliminated every discarded cigarette filter. Plaintiff alleges that feasible alternative designs and

materials existed that would have materially reduced the persistence, physical accumulation, and resulting municipal burdens caused by the challenged design.

286. Once Fresno establishes that the challenged design was a substantial factor in causing the alleged harm, the Manufacturing Defendants bear the burden of proving that the benefits of that design outweighed its risks.

287. The conduct of consumers in discarding cigarette filters does not eliminate the design defect or break the chain of causation because immediate disposal is an inherent part of the product's intended lifecycle, and the widespread disposal pathway alleged herein was known, statistically predictable, and reasonably foreseeable to the Manufacturing Defendants.

288. The filters that caused the City's injuries were substantially unchanged in their relevant design and composition from the time they left the Manufacturing Defendants' possession until the cigarettes were consumed and the filters were discarded.

289. The Manufacturing Defendants' defective design was a substantial factor in causing the continuing physical invasion of City property, injury to City-owned or maintained infrastructure, interference with the City's use and operation of that property, and the response and abatement costs alleged herein.

290. This Count is based on the defective design and physical characteristics of the cigarette filters and does not assert a failure-to-warn claim, a claim based upon federally required cigarette labeling, or a claim for smoking-related disease, addiction, personal injury, or healthcare expenditures.

291. As a direct and legal result of the defective design, Fresno is entitled to recover compensatory damages for physical injury to its property and infrastructure, response and abatement costs attributable to that physical injury, and all other legal and equitable relief authorized by California law.

## COUNT V
## Unjust Enrichment / Restitution

292. Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though fully set forth herein.

293. Plaintiff pleads this equitable claim in the alternative to its legal claims and does not seek duplicative recovery.

294. Through the manufacture, marketing, distribution, and sale of filtered cigarettes within California and Fresno, Defendants received and continue to receive substantial revenues, profits, and other economic benefits.

295. Those economic benefits were obtained and retained through the sale of a single-use product whose ordinary and intended lifecycle necessarily generated a persistent plastic waste component immediately following every use.

296. For decades, Defendants knew that a substantial percentage of discarded cigarette filters would be deposited upon public property and transported into publicly owned stormwater and drainage systems. Defendants further knew that Fresno and other public entities would be required to devote personnel, equipment, infrastructure, and financial resources to collecting, removing, managing, and disposing of that waste.

297. Despite that knowledge, Defendants continued to retain all economic benefits associated with their filtered-cigarette business while declining to internalize the foreseeable post-consumption costs generated by their products.

298. Defendants did not establish or adequately fund programs sufficient to collect, remove, transport, manage, or dispose of the persistent plastic filter waste generated through the ordinary use of their products. Nor did Defendants compensate Fresno for the substantial costs the City incurred in performing those activities upon City-owned or maintained property and within City infrastructure.

299. Instead, Defendants shifted and externalized those costs to Fresno while retaining revenues and profits that were made possible, in part, by avoiding meaningful expenditures for safer product designs, product stewardship, post-consumption collection, waste management, remediation, and abatement.

300. Fresno did not voluntarily assume those costs for Defendants' benefit. The City incurred them in order to protect, maintain, clean, repair, and operate its own property and

infrastructure and to perform governmental and proprietary responsibilities necessitated by the continuing accumulation of Defendants' products.

301. The economic benefit received by Defendants was not merely incidental. The externalization of cigarette-filter response and abatement costs was the known and foreseeable consequence of Defendants' deliberate decisions to continue selling filtered cigarettes incorporating persistent cellulose acetate filters without assuming responsibility for the resulting waste stream.

302. Defendants possessed no adequate legal or equitable basis to retain the full economic benefit of the challenged sales while knowingly imposing the associated post-consumption costs upon Fresno.

303. Defendants' retention of those benefits under the circumstances alleged herein is unjust because:

a. Defendants created and profited from the product stream generating the persistent plastic waste;

b. Defendants possessed superior knowledge concerning the composition, persistence, disposal pathway, and municipal consequences of cigarette filters;

c. Defendants investigated feasible product modifications and stewardship measures but elected not to implement measures sufficient to prevent or materially reduce the City's burdens;

d. Defendants retained the financial benefit of avoiding or minimizing those expenditures;

e. Fresno was required to expend its own resources responding to the resulting physical accumulation of filter waste; and

f. Allowing Defendants to retain the full economic benefit while Fresno bears the resulting costs would permit Defendants to profit from the continuing externalization of a known component of their products' lifecycle.

304. No valid express contract governs the subject matter of this claim or authorizes Defendants to impose their post-consumption waste-management costs upon Fresno.

305. Equity therefore requires Defendants to make restitution of the benefits unjustly retained at Fresno's expense, in an amount to be established through discovery and proof.

306. The restitution sought under this Count is limited to the economic benefit causally attributable to the challenged conduct, including the value Defendants obtained by externalizing response, collection, waste-management, remediation, stewardship, and abatement costs to Fresno. Plaintiff does not seek recovery of gross revenues unrelated to the conduct and injuries alleged herein.

307. To the extent necessary to identify and measure the unjust benefit, Fresno seeks an accounting of relevant revenues, avoided expenditures, product-stewardship expenditures, environmental-response expenditures, and other financial information concerning Defendants' filtered-cigarette business.

308. Fresno further seeks such equitable relief as may be appropriate to prevent continued unjust enrichment, including restitution, an accounting, a constructive trust or equitable lien over identifiable funds or proceeds where authorized, and other nonduplicative equitable relief the Court determines to be just.

**COUNT VI**
**Consumer Protection / Unfair Competition**
**Violation of California Business and Professions Code §§ 17200 et seq.**

309. Plaintiff realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

310. California Business and Professions Code section 17200 defines unfair competition to include any unlawful, unfair, or fraudulent business act or practice.

311. At all relevant times, Defendants engaged in business activities within the State of California, including the manufacture, design, marketing, promotion, distribution, and sale of filtered cigarettes intended for purchase, use, and disposal within California, including within Plaintiff's jurisdiction.

312. Defendants' conduct, as alleged herein, constitutes unlawful business practices because it violates and is predicated upon, among other laws:

a) California Civil Code sections 3479 and 3480 (public nuisance);

b) California common law governing continuing trespass;

c) California Penal Code section 374.4 (unlawful disposal of litter and waste);

d) Fresno Municipal Code Chapter 6, Article 7, governing urban stormwater quality management, prohibited and illicit discharges, pollutant control, enforcement, and protection of the municipal stormwater system;

e) Applicable provisions of the Fresno Municipal Code governing public nuisances, litter, unlawful dumping, refuse, and interference with City property and infrastructure;

f) The Porter-Cologne Water Quality Control Act (California Water Code section 13000 et seq.); and

g) Other applicable California statutory and common law governing solid waste, environmental protection, and municipal property rights.

313. Defendants' conduct further constitutes unfair business practices because Defendants have knowingly designed, manufactured, marketed, distributed, and sold filtered cigarettes incorporating persistent plastic filters while possessing actual and constructive knowledge that the ordinary, intended, and statistically dominant post-consumption disposal pathway results in the widespread deposition of those filters onto municipal property and into municipal stormwater systems.

314. Defendants have continued these business practices despite knowing that:

a) Cigarette filters are composed primarily of cellulose acetate, a persistent plastic polymer;

b) The overwhelming majority of discarded cigarette filters remain in the environment for extended periods;

c) Municipalities throughout California bear substantial and continuing costs associated with investigating, collecting, removing, transporting, disposing of, and abating cigarette filter waste; and

d) Feasible alternative product designs, product stewardship measures, and other mitigation strategies have existed or could have been implemented to materially reduce these foreseeable harms.

315. The utility, if any, of Defendants' challenged business practices is substantially outweighed by the harm imposed upon Plaintiff, other California municipalities, the public, and the environment. Defendants have externalized the costs of managing and abating cigarette filter waste while retaining the economic benefits derived from the continued sale of filtered cigarettes incorporating persistent plastic filters.

316. Plaintiff has suffered injury in fact and has lost money and property within the meaning of California Business and Professions Code section 17204 by incurring substantial expenditures, sustaining injury to municipal property and infrastructure, and devoting public resources to investigate, monitor, remove, transport, dispose of, remediate, and abate cigarette filter waste resulting from Defendants' unlawful and unfair business practices.

317. Unless enjoined, Defendants' unlawful and unfair business practices will continue to cause irreparable injury to Plaintiff and will require Plaintiff to continue expending public resources to address the ongoing accumulation of persistent cigarette filter waste.

318. Pursuant to California Business and Professions Code sections 17203 and 17204, Plaintiff seeks all equitable relief authorized by law, including orders requiring Defendants to cease their unlawful and unfair business practices, to implement reasonable abatement and product stewardship measures, to provide restitution to the extent authorized by law, and to grant such other equitable relief as the Court deems just and proper.

## COUNT VII
## Declaratory Relief

319. Plaintiff realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

320. An actual and justiciable controversy exists between Plaintiff and Defendants concerning their respective rights, duties, obligations, and liabilities arising from the manufacture,

marketing, distribution, and sale of filtered cigarettes incorporating persistent cellulose acetate filters.

321. Plaintiff contends that Defendants are legally responsible for the continuing municipal harms, response costs, property damage, operational burdens, and other injuries alleged in this Complaint.

322. Defendants dispute, or are expected to dispute, those contentions and deny responsibility for those harms.

323. A judicial declaration of the parties' respective rights and obligations will resolve an actual controversy, clarify the legal relationships between the parties, and assist in determining responsibility for the continuing municipal harms alleged herein.

324. Plaintiff therefore seeks a declaration of the parties' rights and obligations as authorized by the applicable law governing declaratory relief.

**COUNT VIII**
**Injunctive Relief and Abatement**

325. Plaintiff realleges and incorporates by reference each and every preceding allegation of this Complaint as though fully set forth herein.

326. The continuing manufacture, marketing, distribution, and sale of filtered cigarettes incorporating persistent cellulose acetate filters continues to generate recurring municipal harms and continuing public expenditures.

327. Plaintiff has no adequate remedy at law with respect to the continuing and future accumulation of discarded cigarette filters that will occur absent equitable relief.

328. Plaintiff seeks such injunctive, equitable, and abatement relief as the Court determines to be appropriate under the applicable law, including orders requiring Defendants to fund or otherwise participate in reasonable programs designed to prevent, reduce, manage, remove, or remediate the continuing municipal impacts associated with discarded cigarette filters.

329. Plaintiff further seeks such additional equitable relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against Defendants, and that the Court award the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive and exemplary damages against Defendants, according to proof, pursuant to California Civil Code section 3294;

C. Recovery of all past municipal response costs associated with investigating, monitoring, collecting, removing, transporting, managing, and disposing of discarded cigarette filters;

D. Recovery of all future municipal response costs reasonably anticipated as a result of the continuing manufacture, marketing, distribution, sale, and accumulation of filtered cigarettes incorporating persistent cellulose acetate filters;

E. Recovery of all costs associated with the inspection, maintenance, operation, repair, cleaning, and protection of Plaintiff's streets, sidewalks, parks, public rights-of-way, stormwater infrastructure, drainage systems, waterways, and other public property affected by discarded cigarette filters;

F. Recovery of all environmental response, investigation, monitoring, engineering, planning, regulatory compliance, and administrative costs recoverable under applicable law;

G. Restitution and disgorgement to the extent authorized by applicable law;

H. Declaratory relief determining the parties' respective rights and obligations;

I. Appropriate injunctive and equitable relief, including such abatement measures as the Court determines to be just and proper;

J. Prejudgment interest where authorized by law;

K. Post-judgment interest as permitted by law;

L. Costs of suit;

M. Reasonable attorneys' fees and litigation expenses where authorized by statute, contract, or other applicable law; and

N. Such other and further legal, equitable, declaratory, injunctive, or monetary relief as the Court deems just and proper.

DATED: July 17, 2026

**JUSTICE LAW COLLABORATIVE, LLC**

**KAREN BARTH MENZIES, ESQ.**

*-and-*

**NOBLE MCINTYRE, ESQ.**
**CHRISTOPHER SCHNIEDERS, ESQ.**
**MARIO D'ANGELO, ESQ.**
**MCINTYRE SCHNIEDERS**

*-and-*

**DAVID GROSSMAN, ESQ.**
**KELLY & GROSSMAN, LLP**

*Counsel for Plaintiff, City of Fresno*

**DEMAND FOR JURY TRIAL**

A trial by jury is hereby demanded by Plaintiff City of Fresno.

DATED: July 17, 2026

**JUSTICE LAW COLLABORATIVE, LLC**

**KAREN BARTH MENZIES, ESQ.**

*-and-*

**NOBLE MCINTYRE, ESQ.**
**CHRISTOPHER SCHNIEDERS, ESQ.**
**MARIO D'ANGELO, ESQ.**
**MCINTYRE SCHNIEDERS**

*-and-*

**DAVID GROSSMAN, ESQ.**
**KELLY & GROSSMAN, LLP**

*Counsel for Plaintiff, City of Fresno*

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY STATE BAR NUMBER: 180234<br>NAME: Karen Barth Menzies<br>FIRM NAME: Justice Law Collaborative, LLC<br>STREET ADDRESS: 6701 Center Drive West, #1400<br>CITY: Los Angeles STATE: CA ZIP CODE: 90045<br>TELEPHONE NO.: (310) 363-0030 FAX NO.:<br>EMAIL ADDRESS: karen@justicelc.com<br>ATTORNEY FOR (*name*): Plaintiff, County of Sacramento | *FOR COURT USE ONLY*<br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Fresno<br>By: Amanda Gardenhire, Deputy Clerk<br>**07/17/26 12:28 PM** |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF FRESNO**<br>STREET ADDRESS: 1130 O Street<br>MAILING ADDRESS: 1130 O Street<br>CITY AND ZIP CODE: Fresno, 93724<br>BRANCH NAME: B.F. Sisk Courthouse | |
| CASE NAME:<br>City of Fresno v. Philip Morris USA, Inc., et al. | |
| **CIVIL CASE COVER SHEET**<br>[x] **Unlimited** (Amount demanded exceeds $35,000) [ ] **Limited** (Amount demanded is $35,000 or less)<br>**Complex Case Designation**<br>[ ] Counter [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CASE NUMBER: 26CU02087<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2 and examples on page 3).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Asbestos**
- [ ] Asbestos (04)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/Unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [x] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Song-Beverly Act: Motor Vehicle Lemon Law (49)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Employment Development Department (EDD)**
- [ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Comprehensive groundwater adjudication (47)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. Is this case complex under rule 3.400 of the California Rules of Court? ☒ Yes ☐ No

   If the case is complex, mark the factors requiring exceptional judicial management:

   a. ☐ Large number of separately represented parties
   b. ☒ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☒ Substantial amount of documentary evidence
   d. ☒ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*:

   a. ☒ monetary
   b. ☒ nonmonetary; declaratory or injunctive relief
   c. ☒ punitive

4. Number of causes of action *(specify)*: 8

5. Is this case a class action suit? ☐ Yes ☒ No

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 17, 2026

Karen Barth Menzies
Type or print name

▶ [signature]
Signature of party or attorney for party

**NOTICE**

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, or a collections case under rule 3.740, you must serve a copy of this cover sheet on all other parties to the action or proceeding. (Cal. Rules of Court, rule 3.220.)
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided on page 3 of this form. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**

## CASE TYPES AND EXAMPLES

The list below provides explanations and examples for the case type checkboxes listed in item 1 on this form. The lists of examples below are not meant to be exhaustive, and some case types may have causes of action not listed here.

**Auto Tort**
- Auto (22)–Personal Injury/Property Damage/Wrongful Death
- Uninsured Motorist *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)* (46)

**Asbestos**
- Asbestos (04)
  - Asbestos Property Damage
  - Asbestos Personal Injury/Wrongful Death

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
- Product Liability *(not asbestos or environmental/toxic tort)* (24)
- Medical Malpractice (45)
  - Medical Malpractice–Physicians & Surgeons
  - Other Professional Health Care Malpractice
- Other PI/PD/WD (23)
  - Premises Liability (e.g., slip and fall)
  - Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  - Intentional Infliction of Emotional Distress
  - Negligent Infliction of Emotional Distress
  - Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
- Business Tort/Unfair Business Practice (07)
- Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
- Defamation (e.g., slander, libel) (13)
- Fraud *(other than contract)* (16)
- Intellectual Property (19)
- Professional Negligence (25)
  - Legal Malpractice
  - Other Professional Malpractice *(not medical)*
- Other Non-PI/PD/WD Tort (35)

**Employment**
- Wrongful Termination (36)
- Other Employment (15)

**Contract**
- Breach of Contract/Warranty (06)
  - Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  - Contract/Warranty Breach–Seller Plaintiff *(not fraud)*
  - Negligent Breach of Contract/Warranty
  - Other Breach of Contract/Warranty
- Song-Beverly Act: Motor Vehicle Lemon Law *(check this item if the case involves a Song-Beverly Act claim regarding a motor vehicle)* (49)
- Rule 3.740 Collections *(as defined in Cal. Rules of Court, rule 3.740(a))* (09)
- Other Collections (e.g., money owed, open book accounts, promissory note) (09)
- Insurance Coverage *(not provisionally complex)* (18)
  - Auto Subrogation
  - Other Coverage
- Other Contract (37)
  - Contractual Fraud
  - Other Contract Dispute

**Real Property**
- Eminent Domain/Inverse Condemnation (14)
- Wrongful Eviction (33)
- Other Real Property (e.g., quiet title) (26)
  - Writ of Possession of Real Property
  - Mortgage Foreclosure
  - Quiet Title
  - Other Real Property *(not unlawful detainer)*

**Unlawful Detainer**
- Commercial (31)
- Residential (32)
- Drugs *(if the case involves illegal drugs, check this item; otherwise, choose Commercial or Residential)* (38)

**Judicial Review**
- Asset Forfeiture (05)
- Petition re Arbitration Award (11)
- Writ of Mandate (02)
  - Writ–Administrative Mandamus
  - Writ–Mandamus on Limited Court Case Matter
  - Writ–Other Limited Court Case Review
- Other Judicial Review (39)
  - Review of Health Officer Order
  - Notice of Appeal–Labor Commissioner Appeals

**Employment Development Department (EDD)**
- EDD Decision Review *(if the case involves an Employment Development Department decision, check this item instead of wrongful termination or other employment)* (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
- Antitrust/Trade Regulation (03)
- Construction Defect (10)
- Mass Tort (40)
- Securities Litigation (28)
- Environmental/Toxic Tort (30)
- Comprehensive Groundwater Adjudication (47)
- Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
- Enforcement of Judgment (20)
  - Abstract of Judgment (Out of County)
  - Confession of Judgment *(non-domestic relations)*
  - Sister-State Judgment
  - Administrative Agency Award
  - Petition/Certification of Entry of Judgment on Unpaid Taxes
  - Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
- RICO (27)
- Other Complaint *(not specified above)* (42)
  - Declaratory Relief Only
  - Injunctive Relief Only *(non-harassment)*
  - Mechanic's Lien
  - Other Commercial Complaint Case *(non-tort/non-complex)*
  - Other Civil Complaint *(non-tort/ non-complex)*

**Miscellaneous Civil Petition**
- Partnership and Corporate Governance (21)
- Other Petition *(not specified above)* (43)
  - Civil Harassment
  - Workplace Violence
  - Elder/Dependent Adult Abuse
  - Election Contest
  - Petition for Name Change
  - Petition for Relief From Government Claim Requirement
  - Other Civil Petition

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Fresno
By: Amanda Gardenhire, Deputy Clerk
**07/23/2026**

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

PHILIP MORRIS USA, INC., SEE ATTACHED

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

CITY OF FRESNO

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

***¡AVISO!*** *Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court of California, County of Fresno, 1130 O Street, Fresno, California 93724

CASE NUMBER:
*(Número del Caso):* 26CU02087

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Karen Barth Menzies, Justice Law Collaborative, 6701 Center Drive West, Suite 1400, Los Angeles, California 90045; (310) 363-0030

DATE: *(Fecha)* 07/23/2026 Clerk, by *(Secretario)* A. Gardenhire, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*:

SUM-200(A)

| SHORT TITLE: City of Fresno v. Philip Morris USA, Inc., et al. | CASE NUMBER: 26CU02087 |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff ☒ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

ALTRIA GROUP, INC., R.J. REYNOLDS TOBACCO COMPANY, REYNOLDS AMERICAN INC., SANTA FE NATURAL TOBACCO COMPANY, INC., BRITISH AMERICAN TOBACCO P.L.C., ITG BRANDS, LLC, LIGGETT GROUP, LLC, LIGGETT VECTOR BRANDS LLC, PITCO TOBACCO, INC., and DOES 1 THROUGH 100



Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

| SUPERIOR COURT OF CALIFORNIA • COUNTY OF FRESNO<br>Civil Unlimted Department<br>1130 O Street<br>Fresno, CA 93721-2220<br>(559) 457-2000 | FOR COURT USE ONLY<br><br>FILED<br>07/23/2026<br>Superior Court of California,<br>County of Fresno<br>By: A. Gardenhire |
|---|---|
| TITLE OF CASE:<br><br>City of Fresno v. Philip Morris USA, Inc., et al | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE AND ASSIGNMENT OF JUDGE FOR ALL PURPOSES** | CASE NUMBER:<br>26CU02087 |

**To All Parties and Their Attorneys of Record:**

This case has been assigned to **Jon M Skiles** , Judge for **all purposes.**
All future hearings will be scheduled before this assigned judge, in Department 503.

You are required to appear at a Case Management Conference on **11/10/2026** at **3:28 P.M.** in **Department 503** of the Court located at **1130 O Street,** **Fresno, California 93721.**

You must comply with the requirements set forth in Chapter 2 of the Superior Court of Fresno County, Local Rules. You must file a Case Management Conference Statement at least 15 calendar days before the conference (Cal. Rules of Court, rule 3.725(a).)

Failure to appear at the conference or to comply with these rules may result in imposition of sanctions, waiver of jury trial, or other adverse consequences.

**Defendants:** Appearance at the Case Management Conference does not excuse you from having to file your response in proper legal form within 30 days after the summons is served on you. Failure to file a response in a timely manner may result in adverse consequences, including a default judgment being entered against you. If you do not have an attorney and wish to retain one, there are attorney referral services, legal aid offices, and private practice attorneys in the Fresno area (most may be found on the internet or the local phone book).

**An Order Regarding Remote Appearance (RA-020) is not required for Case Management Conferences unless so ordered by the court. For any other appearances, a party must submit a request for remote appearance to be reviewed.**

---

**DECLARATION**

I declare under penalty of perjury under the laws of the State of California that I gave a copy of the **Notice of Case Management and Assignment of Judge for All Purposes** to the person who presented this case for filing.

Date: 07/23/2026 Clerk, by A. Gardenhire , Deputy

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| JUSTICE LAW COLLABORATIVE, LLC<br>Karen Barth Menzies SBN 180234<br>6701 Center Drive West, 1400<br>Los Angeles, CA 90045<br>TELEPHONE NO: (310) 363-0030 FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: karen@justicelc.com<br>ATTORNEY FOR *(Name)*: Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California, County of Fresno<br>By: Maria Lopez, Deputy Clerk<br>**07/27/26 1:26 PM** |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Fresno<br>STREET ADDRESS: 1130 O Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Fresno, 93721<br>BRANCH NAME: Fresno - Fresno | |
| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>16443448 (28828874) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] Summons
   b. [X] Complaint
   c. [X] Alternative Dispute Resolution (ADR) Package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] Cross-Complaint
   f. [ ] Other *(specify documents)*:
3. a. Party served *(specify name of party as shown on documents served)*:
   PITCO TOBACCO, INC.
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   Registered Agent Solutions, Inc. - Jeff Kurtz - Person Authorized to Accept Service of Process
4. Address where the party was served:
   550 Capitol Mall Suite 1150, Sacramento, CA 95814
5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Fri, Jul 24 2026 (2) at *(time)*: 10:19 AM
   b. [ ] **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:
      from *(city)*: or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
|---|---|

5. c. ☐ **by mail and acknowledgment of receipt of service**. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   (1) on *(date)*: (2) from *(city)*:
   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)
   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐ **by other means** *(specify means of service and authorizing code section)*:

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify)*:
   c. ☐ as occupant.
   d. ☒ On behalf of *(specify)*: PITCO TOBACCO, INC.
   under the following Code of Civil Procedure section:

   ☒ 416.10 (corporation)
   ☐ 416.20 (defunct corporation)
   ☐ 416.30 (joint stock company/association)
   ☐ 416.40 (association or partnership)
   ☐ 416.50 (public entity)
   ☐ other:
   ☐ 415.95 (business organization, form unknown)
   ☐ 416.60 (minor)
   ☐ 416.70 (ward or conservatee)
   ☐ 416.90 (authorized person)
   ☐ 415.46 (occupant)

7. **Person who served papers**
   a. Name: Marina Jimenez
   b. Address: 5341 Old Redwood Highway, Suite 310, Petaluma, CA 94954
   c. Telephone number: 800-938-8815
   d. **The fee** for service was: $200.00
   e. I am:
      (1) ☐ not a registered California process server.
      (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
      (3) ☒ a registered California process server:
         (i) ☐ owner ☐ employee ☒ independent contractor
         (ii) Registration No: 2025-072
         (iii) County: Sacramento

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   or
9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: July 27, 2026

Marina Jimenez

(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000634
5341 Old Redwood Highway, Suite 310
Petaluma, CA 94954
800-938-8815

(SIGNATURE)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| JUSTICE LAW COLLABORATIVE, LLC<br>Karen Barth Menzies SBN 180234<br>6701 Center Drive West, 1400<br>Los Angeles, CA 90045<br>TELEPHONE NO: (310) 363-0030 FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: karen@justicelc.com<br>ATTORNEY FOR *(Name)*: Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Fresno<br>By: April Hoffman, Deputy Clerk<br>**08/4/26 8:39 AM** |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Fresno<br>STREET ADDRESS: 1130 O Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Fresno, 93721<br>BRANCH NAME: Fresno - Fresno | |
| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>16505223 (28899030) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] Summons
   b. [X] Complaint
   c. [X] Alternative Dispute Resolution (ADR) Package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] Cross-Complaint
   f. [X] Other *(specify documents)*: Notice of Case Management Conference and Assignment of Judge for All Purposes
3. a. Party served *(specify name of party as shown on documents served)*:
   ITG Brands, LLC
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   Corporation Service Company (CSC) - Josh Swindell - Person Authorized to Accept Service of Process
4. Address where the party was served:
   2710 Gateway Oaks Dr Suite 150N, Sacramento, CA 95833
5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Mon, Aug 03 2026 (2) at *(time)*: 01:19 PM
   b. [ ] **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*: from *(city)*: or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
|---|---|

5. c. [ ] **by mail and acknowledgment of receipt of service**. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   - (1) on *(date)*: (2) from *(city)*:
   - (3) [ ] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)
   - (4) [ ] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. [ ] **by other means** *(specify means of service and authorizing code section)*:

   [ ] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   - a. [ ] as an individual defendant.
   - b. [ ] as the person sued under the fictitious name of *(specify)*:
   - c. [ ] as occupant.
   - d. [X] On behalf of *(specify)*: ITG Brands, LLC

   under the following Code of Civil Procedure section:

   | | |
   |---|---|
   | [ ] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
   | [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
   | [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
   | [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
   | [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
   | [X] other: Corp. Code 17701.16, LLC | |

7. **Person who served papers**
   - a. Name: Brandon Ortiz
   - b. Address: 5341 Old Redwood Highway, Suite 310, Petaluma, CA 94954
   - c. Telephone number: 800-938-8815
   - d. **The fee** for service was: $60.00
   - e. I am:
     - (1) [ ] not a registered California process server.
     - (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
     - (3) [X] a registered California process server:
       - (i) [ ] owner [ ] employee [X] independent contractor
       - (ii) Registration No: 2012-037
       - (iii) County: Sacramento

8. [X] **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. [ ] **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: August 4, 2026

Brandon Ortiz

(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000634
5341 Old Redwood Highway, Suite 310
Petaluma, CA 94954
800-938-8815

(SIGNATURE)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| JUSTICE LAW COLLABORATIVE, LLC<br>Karen Beth Menzies SBN 180234<br>6701 Center Drive West, 1400<br>Los Angeles, CA 90045<br>TELEPHONE NO: (310) 363-0030 FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: karen@justicelc.com<br>ATTORNEY FOR *(Name)*: Plaintiff | ELECTRONICALLY FILED<br>Superior Court of California,<br>County of Fresno<br>By: April Hoffman, Deputy Clerk<br>08/4/26 8:39 AM |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Fresno<br>STREET ADDRESS: 1130 O Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Fresno, 93721<br>BRANCH NAME: Fresno - Fresno | |
| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>16505221 (28899029) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] Summons
   b. [X] Complaint
   c. [X] Alternative Dispute Resolution (ADR) Package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] Cross-Complaint
   f. [X] Other *(specify documents)*: Notice of Case Management Conference and Assignment of Judge for All Purposes
3. a. Party served *(specify name of party as shown on documents served)*:
   Santa Fe Natural Tobacco Company, Inc.
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   Corporation Service Company (CSC) - Josh Swindell - Person Authorized to Accept Service of Process
4. Address where the party was served:
   2710 Gateway Oaks Dr Suite 150N, Sacramento, CA 95833
5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Mon, Aug 03 2026 (2) at *(time)*: 01:19 PM
   b. [ ] **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:
      from *(city)*: or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
|---|---|

5. c. ☐ **by mail and acknowledgment of receipt of service**. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   (1) on *(date)*: (2) from *(city)*:
   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)
   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)
   d. ☐ **by other means** *(specify means of service and authorizing code section)*:

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify)*:
   c. ☐ as occupant.
   d. ☒ On behalf of *(specify)*: Santa Fe Natural Tobacco Company, Inc.
   under the following Code of Civil Procedure section:
   - ☒ 416.10 (corporation)
   - ☐ 416.20 (defunct corporation)
   - ☐ 416.30 (joint stock company/association)
   - ☐ 416.40 (association or partnership)
   - ☐ 416.50 (public entity)
   - ☐ other:
   - ☐ 415.95 (business organization, form unknown)
   - ☐ 416.60 (minor)
   - ☐ 416.70 (ward or conservatee)
   - ☐ 416.90 (authorized person)
   - ☐ 415.46 (occupant)

7. **Person who served papers**
   a. Name: Brandon Ortiz
   b. Address: 5341 Old Redwood Highway, Suite 310, Petaluma, CA 94954
   c. Telephone number: 800-938-8815
   d. **The fee** for service was: $60.00
   e. I am:
   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☒ a registered California process server:
   (i) ☐ owner ☐ employee ☒ independent contractor
   (ii) Registration No: 2012-037
   (iii) County: Sacramento

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   or
9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: August 4, 2026

Brandon Ortiz

(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000634
5341 Old Redwood Highway, Suite 310
Petaluma, CA 94954
800-938-8815

(SIGNATURE)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| JUSTICE LAW COLLABORATIVE, LLC<br>Karen Barth Menzies SBN 180234<br>6701 Center Drive West, 1400<br>Los Angeles, CA 90045<br>TELEPHONE NO: (310) 363-0030 FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: karen@justicelc.com<br>ATTORNEY FOR *(Name)*: Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Fresno<br>By: Sarah Garay, Deputy Clerk<br>**08/5/26 11:50 AM** |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Fresno<br>STREET ADDRESS: 1130 O Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Fresno, 93721<br>BRANCH NAME: Fresno - Fresno | |
| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>16505226 (28899031) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] Summons
   b. [X] Complaint
   c. [X] Alternative Dispute Resolution (ADR) Package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] Cross-Complaint
   f. [X] Other *(specify documents)*: Notice of Case Management Conference and Assignment of Judge for All Purposes
3. a. Party served *(specify name of party as shown on documents served)*:
   Liggett Group, LLC
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   CT Corporation System (CT Corp) - Angelica Bautista, Intake Specialist - Person Authorized to Accept Service of Process
4. Address where the party was served:
   330 N Brand Blvd Suite 700, Glendale, CA 91203
5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Mon, Aug 03 2026 (2) at *(time)*: 12:47 PM
   b. [ ] **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:
      from *(city)*: or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
|---|---|

5. c. ☐ **by mail and acknowledgment of receipt of service**. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   (1) on *(date)*: (2) from *(city)*:
   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)
   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)
   d. ☐ **by other means** *(specify means of service and authorizing code section)*:

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify)*:
   c. ☐ as occupant.
   d. ☒ On behalf of *(specify)*: Liggett Group, LLC
   under the following Code of Civil Procedure section:
   ☐ 416.10 (corporation) ☐ 415.95 (business organization, form unknown)
   ☐ 416.20 (defunct corporation) ☐ 416.60 (minor)
   ☐ 416.30 (joint stock company/association) ☐ 416.70 (ward or conservatee)
   ☐ 416.40 (association or partnership) ☐ 416.90 (authorized person)
   ☐ 416.50 (public entity) ☐ 415.46 (occupant)
   ☒ other: Corp. Code 17701.16, LLC

7. **Person who served papers**
   a. Name: Zoe Roller
   b. Address: 5341 Old Redwood Highway, Suite 310, Petaluma, CA 94954
   c. Telephone number: 800-938-8815
   d. **The fee** for service was: $60.00
   e. I am:
   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☒ a registered California process server:
   (i) ☐ owner ☐ employee ☒ independent contractor
   (ii) Registration No: 2023100296
   (iii) County: Los Angeles

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   or
9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: August 4, 2026

Zoe Roller

(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000634
5341 Old Redwood Highway, Suite 310
Petaluma, CA 94954
800-938-8815

(SIGNATURE)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| JUSTICE LAW COLLABORATIVE, LLC<br>Karen Barth Menzies SBN 180234<br>6701 Center Drive West, 1400<br>Los Angeles, CA 90045<br>TELEPHONE NO: (310) 363-0030 FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: karen@justicelc.com<br>ATTORNEY FOR *(Name)*: Plaintiff | ELECTRONICALLY FILED<br>Superior Court of California,<br>County of Fresno<br>By: Amanda Nishimura, Deputy Clerk<br>08/5/26 11:50 AM |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Fresno<br>STREET ADDRESS: 1130 O Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Fresno, 93721<br>BRANCH NAME: Fresno - Fresno | |
| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>16505218 (28899032) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] Summons
   b. [X] Complaint
   c. [X] Alternative Dispute Resolution (ADR) Package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] Cross-Complaint
   f. [X] Other *(specify documents)*: Notice of Case Management Conference and Assignment of Judge for All Purposes
3. a. Party served *(specify name of party as shown on documents served)*:
   Liggett Vector Brands LLC
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   CT Corporation System (CT Corp) - Angelica Bautista, Intake Specialist - Person Authorized to Accept Service of Process
4. Address where the party was served:
   330 N Brand Blvd Suite 700, Glendale, CA 91203
5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Mon, Aug 03 2026 (2) at *(time)*: 12:47 PM
   b. [ ] **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:
      from *(city)*: or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
|---|---|

5. c. [ ] **by mail and acknowledgment of receipt of service**. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   (1) on *(date)*: (2) from *(city)*:
   (3) [ ] with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)
   (4) [ ] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)
   d. [ ] **by other means** *(specify means of service and authorizing code section)*:

   [ ] Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. [ ] as an individual defendant.
   b. [ ] as the person sued under the fictitious name of *(specify)*:
   c. [ ] as occupant.
   d. [X] On behalf of *(specify)*: Liggett Vector Brands LLC
   under the following Code of Civil Procedure section:
   - [ ] 416.10 (corporation)
   - [ ] 416.20 (defunct corporation)
   - [ ] 416.30 (joint stock company/association)
   - [ ] 416.40 (association or partnership)
   - [ ] 416.50 (public entity)
   - [X] other: Corp. Code 17701.16, LLC
   - [ ] 415.95 (business organization, form unknown)
   - [ ] 416.60 (minor)
   - [ ] 416.70 (ward or conservatee)
   - [ ] 416.90 (authorized person)
   - [ ] 415.46 (occupant)

7. **Person who served papers**
   a. Name: Zoe Roller
   b. Address: 5341 Old Redwood Highway, Suite 310, Petaluma, CA 94954
   c. Telephone number: 800-938-8815
   d. **The fee** for service was: $60.00
   e. I am:
   (1) [ ] not a registered California process server.
   (2) [ ] exempt from registration under Business and Professions Code section 22350(b).
   (3) [X] a registered California process server:
   (i) [ ] owner [ ] employee [X] independent contractor
   (ii) Registration No: 2023100296
   (iii) County: Los Angeles

8. [X] **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   or
9. [ ] **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: August 4, 2026

Zoe Roller

(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000634
5341 Old Redwood Highway, Suite 310
Petaluma, CA 94954
800-938-8815

(SIGNATURE)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| JUSTICE LAW COLLABORATIVE, LLC<br>Karen Barth Menzies SBN 180234<br>6701 Center Drive West, 1400<br>Los Angeles, CA 90045<br>TELEPHONE NO: (310) 363-0030 FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: karen@justicelc.com<br>ATTORNEY FOR *(Name)*: Plaintiff | ELECTRONICALLY FILED<br>Superior Court of California,<br>County of Fresno<br>By: Lily Vang, Deputy Clerk<br>08/7/26 12:37 PM |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Fresno<br>STREET ADDRESS: 1130 O Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Fresno, 93721<br>BRANCH NAME: Fresno - Fresno | |
| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>16505215 (28899023) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] Summons
   b. [X] Complaint
   c. [X] Alternative Dispute Resolution (ADR) Package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] Cross-Complaint
   f. [X] Other *(specify documents)*: Additional Parties Attachment, Notice of Case Management Conference and Assignment of Judge for All Purposes
3. a. Party served *(specify name of party as shown on documents served)*:
   Philip Morris USA, Inc.
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   United Agent Group, Inc. - Jennifer Lee - Person Authorized to Accept Service of Process
4. Address where the party was served:
   7801 Folsom Blvd Suite 202, Sacramento, CA 95826
5. I served the party *(check proper box)*
   a. [X] **by personal service**. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Tue, Aug 04 2026 (2) at *(time)*: 09:55 AM
   b. [ ] **by substituted service**. On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:
      from *(city)*: or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
| --- | --- |

5. c. ☐ **by mail and acknowledgment of receipt of service**. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   (1) on *(date)*: (2) from *(city)*:
   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)
   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)
   d. ☐ **by other means** *(specify means of service and authorizing code section)*:

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify)*:
   c. ☐ as occupant.
   d. ☒ On behalf of *(specify)*: Philip Morris USA, Inc.
   under the following Code of Civil Procedure section:
   ☒ 416.10 (corporation)
   ☐ 416.20 (defunct corporation)
   ☐ 416.30 (joint stock company/association)
   ☐ 416.40 (association or partnership)
   ☐ 416.50 (public entity)
   ☐ other:
   ☐ 415.95 (business organization, form unknown)
   ☐ 416.60 (minor)
   ☐ 416.70 (ward or conservatee)
   ☐ 416.90 (authorized person)
   ☐ 415.46 (occupant)

7. **Person who served papers**
   a. Name: Brandon Ortiz
   b. Address: 5341 Old Redwood Highway, Suite 310, Petaluma, CA 94954
   c. Telephone number: 800-938-8815
   d. **The fee** for service was: $110.00
   e. I am:
   (1) ☐ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☒ a registered California process server:
   (i) ☐ owner ☐ employee ☒ independent contractor
   (ii) Registration No: 2012-037
   (iii) County: Sacramento

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   or
9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: August 6, 2026
Brandon Ortiz
(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000634
5341 Old Redwood Highway, Suite 310
Petaluma, CA 94954
800-938-8815

(SIGNATURE)

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)* | FOR COURT USE ONLY |
|---|---|
| Karen Barth Menzies SBN 180234<br>JUSTICE LAW COLLABORATIVE, LLC<br>6701 Center Drive West, 1400<br>Los Angeles, California 90045<br>TELEPHONE NO: 310-363-0030 FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: kbm@kbmlaw.com<br>ATTORNEY FOR *(Name)*: Plaintiff | **ELECTRONICALLY FILED**<br>Superior Court of California, County of Fresno<br>By: Pearl Shaeffer, Deputy Clerk<br>**08/13/26 11:32 AM** |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Fresno<br>STREET ADDRESS: 1130 O Street<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Fresno, 93721<br>BRANCH NAME: Fresno - Fresno | |
| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>16505225 (28899024) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [X] Summons
   b. [X] Complaint
   c. [X] Alternative Dispute Resolution (ADR) Package
   d. [X] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] Cross-Complaint
   f. [X] Other *(specify documents)*: Notice of Case Management Conference and Assignment of Judge for All Purposes,
3. a. Party served *(specify name of party as shown on documents served)*:
   Altria Group, Inc.
   b. [X] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
   United Agent Group, Inc. - Shelby Derrick - Person Authorized to Accept Service of Process
4. Address where the party was served:
   425 W Washington St Suite 4, Suffolk, VA 23434
5. I served the party *(check proper box)*
   a. [X] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Fri, Aug 07 2026 (2) at *(time)*: 11:08 AM
   b. [ ] **by substituted service.** On *(date)*: at *(time)*: I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:
      from *(city)*: or [ ] a declaration of mailing is attached.
      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| PLAINTIFF / PETITIONER: CITY OF FRESNO<br>DEFENDANT / RESPONDENT: PHILIP MORRIS USA, INC., et al. | CASE NUMBER:<br>26CU02087 |
|---|---|

5. c. ☐ **by mail and acknowledgment of receipt of service**. I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
   (1) on *(date)*: (2) from *(city)*:
   (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)
   (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)
   d. ☐ **by other means** *(specify means of service and authorizing code section)*:

   ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify)*:
   c. ☐ as occupant.
   d. ☒ On behalf of *(specify)*: Altria Group, Inc.
   under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| ☐ other: | |

7. **Person who served papers**
   a. Name: Jonathan Meador
   b. Address: 5341 Old Redwood Highway, Suite 310, Petaluma, CA 94954
   c. Telephone number: 800-938-8815
   d. **The fee** for service was: 150.00
   e. I am:
   (1) ☒ not a registered California process server.
   (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
   (3) ☐ a registered California process server:
   (i) ☐ owner ☐ employee ☐ independent contractor
   (ii) Registration No:
   (iii) County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: August 13, 2026

Jonathan Meador

(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000634
5341 Old Redwood Highway, Suite 310
Petaluma, CA 94954
800-938-8815

(SIGNATURE)

Karen Barth Menzies (CA SBN 180234)
karen@justicelc.com
**JUSTICE LAW COLLABORATIVE, LLC**
6701 Center Drive West, 1400
Los Angeles, California 90045
Telephone: (310) 363-0030

Noble McIntyre (OK No. 16359) (*pro hac vice* forthcoming)
noble@mcintyrelaw.com
Christopher Schnieders (MO No. 57725) (*pro hac vice* pending)
chris@mcintyreschnieders.com
Mario D'Angelo (NY No. 2178044) (*pro hac vice* forthcoming)
mdesq@mcintyreschnieders.com
**MCINTYRE SCHNIEDERS**
6731 W. 121st St.
Overland Park, Kansas 66209
Telephone: (913) 627-9416

David Grossman (NY No. 2693919) (*pro hac vice* forthcoming)
dgrossman@kellyandgrossman.com
**KELLY & GROSSMAN, LLP**
1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996

*Counsel for Plaintiff, City of Fresno*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Fresno
By: Lily Vang, Deputy Clerk
**08/17/26 2:28 PM**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF FRESNO**

| | |
|---|---|
| CITY OF FRESNO,<br><br>Plaintiff,<br><br>vs.<br><br>PHILIP MORRIS USA, INC., ALTRIA GROUP, INC., R.J. REYNOLDS TOBACCO COMPANY, REYNOLDS AMERICAN INC., SANTA FE NATURAL TOBACCO COMPANY, INC., BRITISH AMERICAN TOBACCO P.L.C., ITG BRANDS, LLC, LIGGETT GROUP, LLC, LIGGETT VECTOR BRANDS LLC, PITCO TOBACCO, INC., and DOES 1 THROUGH 100,<br><br>Defendants. | **Case No.: 26CU02087**<br><br>*Assigned for All Purposes to Hon. Jon M. Skiles*<br><br>**NOTICE OF HEARING; VERIFIED APPLICATION OF CHRISTOPHER SCHNIEDERS FOR ADMISSION *PRO HAC VICE* TO APPEAR AS COUNSEL FOR PLAINTIFF**<br><br>Date: 12/09/26<br>Time: 3:30 p.m.<br>Department: 503<br><br>Action Filed: 07/17/2026<br>Trial Date: TBD |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on December 9, 2026, at 3:30 p.m., or as soon thereafter as the matter may be heard in Department 503 of the above-referenced Court located at 1130 O Street, Fresno, California 93721, and pursuant to Rule 9.40 of the California Rules of Court, Christopher Schnieders of McIntyre Schnieders, counsel of record for Plaintiff, City of Fresno, hereby applies for permission to appear as counsel *pro hac vice* in the above-referenced action. This application is based on this Notice, the Memorandum in Support, the Verified Application of Christopher Schnieders, and the Declaration of Karen Barth Menzies. A true and correct copy of said application is attached hereto and incorporated herein. This Notice of Hearing has been given and served at the time prescribed in Cal. Code of Civil Procedure §1005, pursuant to Cal. Rules of Court, Rule 9.40. Defendants have not yet appeared in this matter; however, Plaintiff does not anticipate any oppositions to this Application.

DATED: August 17, 2026

**JUSTICE LAW COLLABORATIVE, LLC**

**KAREN BARTH MENZIES, ESQ.**

*-and-*

**NOBLE MCINTYRE, ESQ.**
**CHRISTOPHER SCHNIEDERS, ESQ.**
**MARIO D'ANGELO, ESQ.**
**MCINTYRE SCHNIEDERS**

*-and-*

**DAVID GROSSMAN, ESQ.**
**KELLY & GROSSMAN, LLP**

*Counsel for Plaintiff, City of Fresno*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This case is an action to recover the costs imposed upon municipalities by the design, manufacture, marketing, distribution, and sale of filtered cigarettes incorporating non-biodegradable plastic filters that Defendants have long known, and intended, would be discarded following their ordinary and intended use, thereby resulting in the continual deposition of persistent plastic waste upon municipal property and within municipal stormwater systems and waterways.

Christopher Schnieders is an attorney and licensed to practice law in the states of Kansas, Missouri, and Illinois. He is a member in good standing of the Kansas, Missouri, and Illinois State Bars. *See* **Exhibit 1**, Certificates of Good Standing attached hereto.

Mr. Schnieders is an attorney with the law firm McIntrye Schnieders, and with Karen Barth Menzies of the law firm Justice Law Collaborative, LLC, are counsel for Plaintiff, City of Fresno, in connection with this action. Mr. Schnieders applies to appear in the above-captioned case as co-counsel *Pro Hac Vice* for Plaintiff, City of Fresno.

## II. MR. SCHNIEDERS IS QUALIFIED TO APPEAR AS COUNSEL *PRO HAC VICE*

Pursuant to California Rules of Court, Rule 9.40, a California state court has the authority to grant a written application for leave to appear as counsel *Pro Hac Vice*, submitted by an applicant who has been retained in a particular cause pending before the court, who is not a member of the California State Bar, but is a practicing member in good standing of the highest court of any state.

Mr. Schnieders is a member of good standing in the states of Kansas, Missouri, and Illinois. This fact is confirmed in the Certificates of Good Standing, concurrently filed with the Court, and the Application itself. *See* Exhibit 1 attached hereto.

Mr. Schnieders has never been suspended, disbarred, or resigned as a result of a disciplinary charge, investigation, or proceeding, from the practice of law in any jurisdiction. No disciplinary actions are presently pending against Mr. Schnieders in the states of Kansas, Missouri, Illinois, or in any other jurisdiction. *Id*.

Mr. Schnieders is neither a resident of the State of California (he resides in Kansas), nor does he have regular employment or engage in substantial business in California.

## III. CONCLUSION

Wherefore, based on the authorities and reasoning herein, Plaintiff, City of Fresno, respectfully requests that this Court grant the Application of Christopher Schnieders to Appear as Counsel *Pro Hac Vice* on its behalf.

DATED: August 17, 2026

**JUSTICE LAW COLLABORATIVE, LLC**

**KAREN BARTH MENZIES, ESQ.**

*-and-*

**NOBLE MCINTYRE, ESQ.**
**CHRISTOPHER SCHNIEDERS, ESQ.**
**MARIO D'ANGELO, ESQ.**
**MCINTYRE SCHNIEDERS**

*-and-*

**DAVID GROSSMAN, ESQ.**
**KELLY & GROSSMAN, LLP**

*Counsel for Plaintiff, City of Fresno*

**VERIFIED APPLICATION OF CHRISTOPHER SCHNIEDERS**

I, Christopher Schnieders, declare:

I hereby request permission pursuant to Rule 9.40 of the California Rules of Court to appear as counsel *pro hac vice* in this action on behalf of Plaintiff, City of Fresno, in association with Karen Barth Menzies, in the above-entitled action now pending before this Court. I have personal knowledge of the facts stated in this Verified Application and, if called upon to testify, could and would testify competently thereto in a court of law.

1. I am not a California resident. I reside at 5010 W. 142nd Ter, Leawood, KS 66224. I am an attorney with the law firm McIntyre Schnieders, LLC. My office address is 6731 W. 121st St., Suite 201, Overland Park, KS 66209. My office phone number is (913) 627-9416, and my fax number is (913) 312-5841.

2. I have been retained by Plaintiff, City of Fresno, to appear in the above-captioned matter.

3. I am admitted and licensed to practice law in the following courts:

| **Court** | **Date of Admission** |
|---|---|
| Kansas State Bar, Bar No. 22434 | 5/13/2006 |
| Missouri State Bar, Bar No. 57725 | 9/21/2005 |
| Illinois State Bar, Bar No. 6290700 | 11/9/2006 |

4. I am a member in good standing in these courts and have not been suspended or disbarred in any court, nor have I been the subject of disciplinary proceedings in these courts. *See* **Exhibit 1** attached hereto.

5. I am not employed in the State of California, nor do I regularly engage in substantial business, professional, or other activities in the State of California.

6. I have filed the following applications for *pro hac vice* admission in California during the last two years: (1) *County of Sacramento v. Philip Morris USA, Inc., et al*, Superior Court for the

State of California, County of Sacramento, Case No. 26CV017286, filed on August 17, 2026 and pending approval.

7. I request permission of the Court to appear as counsel *pro hac vice* in this matter in association with Karen Barth Menzies, who is counsel of record in this action for Plaintiff, City of Fresno, and an attorney at Justice Law Collaborative, LLC, 6701 Center Drive West, #1400, Los Angeles, California 90045, telephone number (310) 363-0030.

8. My Verified Application to Appear as Counsel *Pro Hac Vice*, along with the supporting papers and the $500 filing fee, were submitted for filing to the Superior Court of the State of California for the County of Fresno on August 17, 2026. A copy of my Verified Application and all supporting papers, along with payment of the $600 fee, were uploaded to the Applicant Portal for the State Bar of California on August 17, 2026, and are pending approval by the State Bar. *See* **Exhibit 2** attached hereto.

9. I agree to comply with the provisions of the California Rules of Professional Conduct, and I consent to the jurisdiction of the courts and disciplinary boards of the State of California in connection with this matter.

10. I respectfully request leave to appear *pro hac vice* on behalf of Plaintiff, City of Fresno, in this case.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on the 17th day of August 2026, in Overland Park, Kansas.

Christopher Schnieders

# EXHIBIT 1

# The Supreme Court of Kansas

## Certificate of Good Standing

I, **Douglas T. Shima**, Clerk of the Supreme Court of the State of Kansas, do hereby certify that the Supreme Court of Kansas is the highest court of law, and the court of last resort within the State of Kansas, and has exclusive jurisdiction over and control of the admission of applicants to the bar of this state.

I do further certify that on May 11, 2006,

Christopher Louis Schnieders

was duly admitted to practice as an attorney and counselor of the Supreme Court and all other courts of the State of Kansas and is, on the date indicated below, a member in good standing of the Kansas Bar.

Witness my hand and the seal of the Supreme Court, hereto affixed at my office in Topeka, Kansas, this 24th day of July, 2026.

Douglas T. Shima

*Clerk of the Supreme Court of Kansas*

Active Status

# *The Supreme Court of Missouri*

MDCCCXX

## *Certificate of Admission as an Attorney at Law*

I, Betsy Ledgerwood, Clerk of the Supreme Court of Missouri, do hereby certify that the records of this office show that on 9/21/2005,

*Christopher Louis Schnieders*

was duly admitted and licensed to practice as an Attorney and Counselor at Law in the Supreme Court of Missouri and all courts of record in this state, and is, on the date indicated below, a member in good standing of this Bar.

IN TESTIMONY WHEREOF, I hereunto set my hand and affix the seal of the Supreme Court of Missouri at my office in Jefferson City, Missouri, this 27th day of July, 2026.

Betsy Ledgerwood

Clerk of the Supreme Court of Missouri

# Certificate of Admission
# To the Bar of Illinois

I, Cynthia A. Grant, Clerk of the Supreme Court of Illinois, do hereby certify that

Christopher Louis Schnieders

has been duly licensed and admitted to practice as an Attorney and Counselor at Law within this State; has duly taken the required oath to support the CONSTITUTION OF THE UNITED STATES and of the STATE OF ILLINOIS, and also the oath of office prescribed by law, that said name was entered upon the Roll of Attorneys and Counselors in my office on 11/09/2006 and is in good standing, so far as the records of this office disclose.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the seal of said Court, this 31st day of July, 2026.

Cynthia A. Grant

Clerk,
Supreme Court of the State of Illinois

# EXHIBIT 2

**Magan Ennis**

**From:** State Bar of California - Special Admissions <special.admissions@calbar.ca.gov>
**Sent:** Monday, August 17, 2026 3:13 PM
**To:** chris@mcintyreschnieders.com; Magan Ennis
**Subject:** Pro Hac Vice Application Acknowledgement Notice

The State Bar of California — OFFICE OF ADMISSIONS

**PHV Application's Case Number:** 01400294
**Trial Case Name:** City of Fresno v. Philip Morris USA, Inc., et al.
**Trial Case Number:** 26CU02087

Dear Magan Ennis,

Your Pro Hac Vice (PHV) application has been received.

Ensure that you have submitted the following in connection with your PHV application.

- A copy of the application to the court, which meets the requirements of rule 9.40 of the California Rules of Court; and
- The notice of hearing, if applicable.

If you have not yet submitted the above documentation, please do so within 60 days of submission of your PHV application by responding to this email or uploading the documents in the Applicant Portal following the steps below.

- Log in to your Applicant Portal.
- Click “Special Admissions” at the top of the home page.
- Select “Pro Hac Vice.”
- Under “Upload documents to a previously submitted application,” click “Next.”
- Follow the instructions to search for the Application’s Case Number listed in this email and upload the required documents.

The required supporting documents must be satisfied as soon as possible. We strongly encourage you to do so within 60 days of this notice. Incomplete PHV applications will be abandoned after 6 months from the date of submission. Please contact the Special Admissions unit if you need more time to provide the required documentation. If your PHV application is abandoned, you will not be entitled to a refund and must submit a new PHV application.

Sincerely,

Eligibility and Special Admissions, Office of Admissions
The State Bar of California

ref:!00Dt00TZax.!500cs02ALzT7:ref

**From:** State Bar of California - Admissions
**To:** Magan Ennis
**Subject:** State Bar Of California* Payment Has Been Received
**Date:** Monday, August 17, 2026 3:12:45 PM

Banner

Dear Magan Ennis,

Thank you for submitting your payment. It is currently being processed. Please allow 7 days for the bank to verify and process the payment. If there are any issues with your payment, you will be notified directly. A detailed breakdown of your transaction is below:

Application Type : Pro Hac Vice Application
Original Subtotal : $ 600.00
Service Fee : $ 15.00

Total Paid Amount : $ 615.00
Payment Date : 08/17/2026

Sincerely,

State Bar Of California*
180 Howard St.
San Francisco, CA 94105
US

*Please do not reply to this message. This email is not regularly monitored.*

- Close Window
- Print This Page
- Expand All | Collapse All

# Applicant Community

## Payment from Ennis Administrative Account

| | | | |
|---|---|---|---|
| **Payment Name** | Payment from Ennis Administrative Account | **Status** | Captured |
| **Payment Method** | Credit Card | **Payment Date** | 8/17/2026 2:12 PM |
| **Type** | Charge | **Total Paid Amount** | $615.00 |
| **Withdrawal Date** | | **Total Refunded Amount** | |

### Bank Account Information

| | | | |
|---|---|---|---|
| **Bank ABA Code** | | **Name On Account** | |
| **Bank Account Number** | | **Business Checking Account** | ☐ |

### Credit Card Information

| | | | |
|---|---|---|---|
| **Credit Card Number** | | **Credit Card Type** | Amex |
| **First Name** | Josh | **Expiry Month** | 12 |
| **Last Name** | Forman | **Expiry Year** | 2027 |

### Refund Request Details

| | | | |
|---|---|---|---|
| **Refund Request Date** | | **Refund Request Reason** | |
| **Refund Request Status** | | **Refund Request Details** | |

### Reference

| | | | |
|---|---|---|---|
| **Contact** | Magan Ennis | **Email** | magan@justicelc.com |
| **Case** | 01400294 | **Phone** | 3103630030 |

### Billing Address

| | | | |
|---|---|---|---|
| **Billing Street** | 210 Washington Street | **Billing Zip** | 02356 |
| **Billing City** | North Easton | **Billing Country** | US |
| **Billing State** | Massachusetts | | |

### Transaction Information

| | | | |
|---|---|---|---|
| **Transaction ID** | 7870011549426973504900 | **Payment Result** | Successful transaction. |
| **AVS Code** | V | **Processing Fee** | |
| **CVV2 Match** | | **Net Amount** | |

### System Information

| | |
|---|---|
| **Created By** | Magan Ennis, 8/17/2026 2:12 PM |

Thank you for submitting your payment. It is currently being processed. Please allow 7 days for the bank to verify and process the payment. If there are any issues with your payment, you will be notified directly. A detailed breakdown of your transaction is below:

| | |
|---|---|
| Amount : | $615.00 |
| Payment Date : | 08/17/2026 02:12 PM |
| Payment Method : | Credit Card |
| Reference : | Payment from Ennis Administrative Account |

PAID

Karen Barth Menzies (CA SBN 180234)
karen@justicelc.com
**JUSTICE LAW COLLABORATIVE, LLC**
6701 Center Drive West, 1400
Los Angeles, California 90045
Telephone: (310) 363-0030

Noble McIntyre (OK No. 16359) (*pro hac vice* forthcoming)
noble@mcintyrelaw.com
Christopher Schnieders (MO No. 57725) (*pro hac vice* pending)
chris@mcintyreschnieders.com
Mario D'Angelo (NY No. 2178044) (*pro hac vice* forthcoming)
mdesq@mcintyreschnieders.com
**MCINTYRE SCHNIEDERS**
6731 W. 121st St.
Overland Park, Kansas 66209
Telephone: (913) 627-9416

David Grossman (NY No. 2693919) (*pro hac vice* forthcoming)
dgrossman@kellyandgrossman.com
**KELLY & GROSSMAN, LLP**
1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996

*Counsel for Plaintiff, City of Fresno*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Fresno
By: Lily Vang, Deputy Clerk
**08/17/26 2:28 PM**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF FRESNO**

| | |
|---|---|
| CITY OF FRESNO,<br><br>Plaintiff,<br><br>vs.<br><br>PHILIP MORRIS USA, INC., ALTRIA GROUP, INC., R.J. REYNOLDS TOBACCO COMPANY, REYNOLDS AMERICAN INC., SANTA FE NATURAL TOBACCO COMPANY, INC., BRITISH AMERICAN TOBACCO P.L.C., ITG BRANDS, LLC, LIGGETT GROUP, LLC, LIGGETT VECTOR BRANDS LLC, PITCO TOBACCO, INC., and DOES 1 THROUGH 100,<br><br>Defendants. | **Case No.: 26CU02087**<br><br>*Assigned for All Purposes to Hon. Jon M. Skiles*<br><br>**DECLARATION OF KAREN BARTH MENZIES IN SUPPORT OF VERIFIED APPLICATION OF CHRISTOPHER SCHNIEDERS FOR ADMISSION *PRO HAC VICE* TO APPEAR AS COUNSEL FOR PLAINTIFF**<br><br>Date: 12/09/26<br>Time: 3:30 p.m.<br>Department: 503<br><br>Action Filed: 07/17/2026<br>Trial Date: TBD |

**DECLARATION OF KAREN BARTH MENZIES**

I, Karen Barth Menzies, declare as follows:

1. I am a member of the Bar of the State of California and am a partner of the firm Justice Law Collaborative, LLC, counsel of record for Plaintiff, City of Fresno, in the above-entitled action.

2. I make this declaration based upon personal knowledge and if called as a witness, I could and would testify competently to the matters stated herein.

3. The Verified Application of Christopher Schnieders to Appear as Counsel *Pro Hac Vice*, along with the supporting papers and the $500 filing fee, were submitted for filing to the Superior Court of the State of California for the County of Fresno on August 17, 2026.

4. **Exhibit 1** attached hereto is a true and correct copy of the August 17, 2026, correspondence from the State Bar of California stating that Mr. Schnieders' *Pro Hac Vice* Application has been successfully filed and is pending before the State Bar of California, Office of Admissions. **Exhibit 2** attached hereto are true and correct copies of the receipts for payment of the $600 fee submitted to the State Bar of California on August 17, 2026.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on this 17th day of August, 2026, in Los Angeles, California.

Karen Barth Menzies, Esq. (CA SBN 180234)

# EXHIBIT 1

**Magan Ennis**

| | |
|---|---|
| **From:** | State Bar of California - Special Admissions <special.admissions@calbar.ca.gov> |
| **Sent:** | Monday, August 17, 2026 3:13 PM |
| **To:** | chris@mcintyreschnieders.com; Magan Ennis |
| **Subject:** | Pro Hac Vice Application Acknowledgement Notice |

The State Bar of California

OFFICE OF ADMISSIONS

**PHV Application's Case Number:** 01400294
**Trial Case Name:** City of Fresno v. Philip Morris USA, Inc., et al.
**Trial Case Number:** 26CU02087

Dear Magan Ennis,

Your Pro Hac Vice (PHV) application has been received.

Ensure that you have submitted the following in connection with your PHV application.

- A copy of the application to the court, which meets the requirements of rule 9.40 of the California Rules of Court; and
- The notice of hearing, if applicable.

If you have not yet submitted the above documentation, please do so within 60 days of submission of your PHV application by responding to this email or uploading the documents in the Applicant Portal following the steps below.

- Log in to your Applicant Portal.
- Click “Special Admissions” at the top of the home page.
- Select “Pro Hac Vice.”
- Under “Upload documents to a previously submitted application,” click “Next.”
- Follow the instructions to search for the Application’s Case Number listed in this email and upload the required documents.

The required supporting documents must be satisfied as soon as possible. We strongly encourage you to do so within 60 days of this notice. Incomplete PHV applications will be abandoned after 6 months from the date of submission. Please contact the Special Admissions unit if you need more time to provide the required documentation. If your PHV application is abandoned, you will not be entitled to a refund and must submit a new PHV application.

Sincerely,

Eligibility and Special Admissions, Office of Admissions
The State Bar of California

ref:!00Dt00TZax.!500cs02ALzT7:ref

# EXHIBIT 2

**From:** State Bar of California - Admissions
**To:** Magan Ennis
**Subject:** State Bar Of California* Payment Has Been Received
**Date:** Monday, August 17, 2026 3:12:45 PM

Banner

Dear Magan Ennis,

Thank you for submitting your payment. It is currently being processed. Please allow 7 days for the bank to verify and process the payment. If there are any issues with your payment, you will be notified directly. A detailed breakdown of your transaction is below:

| | |
|---|---|
| Application Type : | Pro Hac Vice Application |
| Original Subtotal : | $ 600.00 |
| Service Fee : | $ 15.00 |

Total Paid Amount : $ 615.00
Payment Date : 08/17/2026

Sincerely,

State Bar Of California*
180 Howard St.
San Francisco, CA 94105
US

*Please do not reply to this message. This email is not regularly monitored.*

- Close Window
- Print This Page
- Expand All | Collapse All

# Applicant Community

## Payment from Ennis Administrative Account

| | | | |
|---|---|---|---|
| Payment Name | Payment from Ennis Administrative Account | Status | Captured |
| Payment Method | Credit Card | Payment Date | 8/17/2026 2:12 PM |
| Type | Charge | Total Paid Amount | $615.00 |
| Withdrawal Date | | Total Refunded Amount | |

### Bank Account Information

| | | | |
|---|---|---|---|
| Bank ABA Code | | Name On Account | |
| Bank Account Number | | Business Checking Account | ☐ |

### Credit Card Information

| | | | |
|---|---|---|---|
| Credit Card Number | | Credit Card Type | Amex |
| First Name | Josh | Expiry Month | 12 |
| Last Name | Forman | Expiry Year | 2027 |

### Refund Request Details

| | | | |
|---|---|---|---|
| Refund Request Date | | Refund Request Reason | |
| Refund Request Status | | Refund Request Details | |

### Reference

| | | | |
|---|---|---|---|
| Contact | Magan Ennis | Email | magan@justicelc.com |
| Case | 01400294 | Phone | 3103630030 |

### Billing Address

| | | | |
|---|---|---|---|
| Billing Street | 210 Washington Street | Billing Zip | 02356 |
| Billing City | North Easton | Billing Country | US |
| Billing State | Massachusetts | | |

### Transaction Information

| | | | |
|---|---|---|---|
| Transaction ID | 78700115494269735049OO | Payment Result | Successful transaction. |
| AVS Code | V | Processing Fee | |
| CVV2 Match | | Net Amount | |

### System Information

| | |
|---|---|
| Created By | Magan Ennis, 8/17/2026 2:12 PM |

Thank you for submitting your payment. It is currently being processed. Please allow 7 days for the bank to verify and process the payment. If there are any issues with your payment, you will be notified directly. A detailed breakdown of your transaction is below:

| | |
|---|---|
| Amount : | $615.00 |
| Payment Date : | 08/17/2026 02:12 PM |
| Payment Method : | Credit Card |
| Reference : | Payment from Ennis Administrative Account |

PAID

Karen Barth Menzies (CA SBN 180234)
karen@justicelc.com
**JUSTICE LAW COLLABORATIVE, LLC**
6701 Center Drive West, 1400
Los Angeles, California 90045
Telephone: (310) 363-0030

Noble McIntyre (OK No. 16359) (*pro hac vice* forthcoming)
noble@mcintyrelaw.com
Christopher Schnieders (MO No. 57725) (*pro hac vice* pending)
chris@mcintyreschnieders.com
Mario D'Angelo (NY No. 2178044) (*pro hac vice* forthcoming)
mdesq@mcintyreschnieders.com
**MCINTYRE SCHNIEDERS**
6731 W. 121st St.
Overland Park, Kansas 66209
Telephone: (913) 627-9416

David Grossman (NY No. 2693919) (*pro hac vice* forthcoming)
dgrossman@kellyandgrossman.com
**KELLY & GROSSMAN, LLP**
1248 Montauk Highway
West Islip, New York 11795
Telephone: (631) 314-4996

*Counsel for Plaintiff, City of Fresno*

**ELECTRONICALLY RECEIVED**
Superior Court of California,
County of Fresno
By: Lily Vang, Deputy Clerk
**08/17/26 2:28 PM**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**FOR THE COUNTY OF FRESNO**

| | |
|---|---|
| CITY OF FRESNO,<br><br>Plaintiff,<br><br>vs.<br><br>PHILIP MORRIS USA, INC., ALTRIA GROUP, INC., R.J. REYNOLDS TOBACCO COMPANY, REYNOLDS AMERICAN INC., SANTA FE NATURAL TOBACCO COMPANY, INC., BRITISH AMERICAN TOBACCO P.L.C., ITG BRANDS, LLC, LIGGETT GROUP, LLC, LIGGETT VECTOR BRANDS LLC, PITCO TOBACCO, INC., and DOES 1 THROUGH 100,<br><br>Defendants. | **Case No.: 26CU02087**<br><br>*Assigned for All Purposes to Hon. Jon M. Skiles*<br><br>**[PROPOSED] ORDER RE VERIFIED APPLICATION OF CHRISTOPHER SCHNIEDERS FOR ADMISSION *PRO HAC VICE* TO APPEAR AS COUNSEL FOR PLAINTIFF**<br><br>Date: 12/09/26<br>Time: 3:30 p.m.<br>Department: 503<br><br>Action Filed: 07/17/2026<br>Trial Date: TBD |

Having considered the Application of Christopher Schnieders for Admission *Pro Hac Vice* and GOOD CAUSE APPEARING therefore, pursuant to California Rule of Court 9.40, the Court finds that Christopher Schnieders is eligible to appear as counsel pro hac vice for Plaintiff, City of Fresno, in the above action. It is further ordered that an annual renewal fee of $500 must be paid each year before the anniversary of this Order pursuant to Cal. Gov't. Code Section 70617(e)(2).

IT IS SO ORDERED.

DATE:________________________ BY: ____________________________________

HONORABLE JON M. SKILES
JUDGE OF THE SUPERIOR COURT